## UNITED STATES v. SWITZER.

(First Division. Juneau. March 1, 1920.)

### No. 1397-B.

**War ⊙—33—Termination—Criminal Law.**

> The President's declaration to Congress that the war ended on November 11, 1918, will be accepted as prima facie correct until events show the contrary, so that chapter 60 of the Session laws of Alaska of 1917, providing a penalty for the offense of uttering language disrespectful and contemptuous of the flag in time of war, is inapplicable to an offense committed after November 11, 1918.

The defendant was indicted on January 21, 1920, under chapter 60, Session Laws Alaska Legislature 1917, for the offense of uttering language disrespectful and contemptuous of the flag of the United States. The disrespectful language is alleged to have been uttered on the 29th day of December, 1919.

Defendant has demurred to the indictment, alleging as ground of demurrer that the facts set forth in the indictment do not constitute a crime, and urges the point that on the 29th day of December, 1919, a state of war did not exist between the United States and any other nation.

J. A. Smiser, U. S. Atty.

O. P. Hubbard, of Juneau, for defendant.

---

⊙—See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

JENNINGS, District Judge. It is manifest from a reading of section 1 of the act in question that, if December 29, 1919, was not "in time of war," no crime has been charged. "In time of war" is synonymous with "during the war." A fact occurring after the war is ended, of course, cannot be considered as occurring "in time of war," or "during the war."

When, then, did the war end? In The Protector, 12 Wall. 700, 20 L. Ed. 463, the Supreme Court of the United States, speaking of the ending of the War of the Rebellion, say:

"Acts of hostility by the insurgents occurred at periods so various, and of such different degrees of importance, and in parts of the country so remote from each other, both at the commencement and the close of the late Civil War, that it would be difficult, if not impossible, to say on what precise day it began or terminated. It is necessary, therefore, to refer to some public act of the political departments of the government to fix the dates; and, for obvious reasons, those of the executive department, which may be, and in fact was, at the commencement of hostilities, obliged to act during the recess of Congress, must be taken."

Now, as to the present war with Germany, the Armistice was declared on November 10, 1918, and on the 11th of that month the President appeared before a joint session of the Senate and the House of Representatives, assembled to receive such communication as he saw fit to give it on the state of the Union:

"Having read to the Congress thus assembled the 34 terms stipulated in the Armistice agreement entered into a few hours before and signed by the representatives of the German army, the President said: 'The war thus comes to an end; for, having accepted these terms of armistice, it will be impossible for the German command to renew it. It is not now possible to assess the consequences of this great consummation. We know only that this tragical war, whose consuming flames swept from one nation to another until all the world was on fire, is at an end, and that it was the privilege of our own people to enter it at its most critical juncture in such fashion and in such force as to contribute in a way of which we are all deeply proud to the great result. We know, too, that the object of the war is attained, the object upon which all free men had set their hearts, and attained with a sweeping completeness which even now we do not realize. Armed imperialism, such as the men conceived who were but yesterday the masters of Germany, is at an end, its illicit ambitions engulfed in black disaster.' Congressional Record of November 11, 1918, and Official U. S. Bulletin, also of that date." United States v. Hicks (D. C.) 256 Fed. 710.

This communication to Congress was in substance and effect such proclamation of the executive department as is referred to in The Protector, supra.

"Every citizen of the United States, the defendant included, may well be presumed, first, to have been informed of the substance of the declaration made by the President, and, second, to have relied upon it as true. Probably all accepted it as correct, and rightfully acted upon it as being in fact true. Hostilities ceased, not a gun has since been fired, the demobilization of our troops is in active progress, and much acclaimed peace negotiations have been under way. Under these circumstances every person in the country had the right to accept the President's official declaration as true, and to act upon it, and especially if it affected the question of whether certain acts were criminal or the reverse." United States v. Hicks (D. C.) 256 Fed. 712.

In the case just cited the United States District Court for the Western District of Kentucky had under consideration a motion in arrest of judgment and a motion for a new trial. It granted the motion for a new trial, saying:

"In our view the statement made by the President on November 11, 1918, must at the very least be received and treated as prima facie true in the present status of this case, though facts may possibly develop to show the contrary. In view of such possible developments of fact, we have concluded it to be best to overrule the defendant's motion in arrest of judgment, but to sustain his motion for a new trial. If at the next term a new trial shall be had, an instructed verdict of not guilty can be asked, and the same might be given, if nothing then appeared to demonstrate the inaccuracy of the President's statement." United States v. Hicks (D. C.) 256 Fed. 713.

There the offense complained of occurred within a month after the Armistice was declared, and the court, as will be seen, intimated that if, at the new trial to be had nothing should have occurred to rebut the prima facie presumption flowing from the President's communication to Congress, a verdict of not guilty would be directed.

The offense which is here being inquired about occurred on the 29th of December, 1919, more than a year after the Armistice was signed. The guns are now silent, the troops have returned, the army has been demobilized, and trading with the enemy has been resumed. It seems to me that it is idle to contend that, simply because no treaty has been signed, the country is still at war. If it is at war, with whom is it at war?

The demurrer will be sustained.