## UNITED STATES v. MEYERS.

(District Court, E. D. Michigan, S. D. April 16, 1920.)

### No. 6775.

War ⊂=4—Statute prohibiting prostitution near military camps still in effect.

> Selective Draft Act May 18, 1917, § 13, as amended by Act July 9, 1918 (Comp. St. Ann. Supp. 1919, § 2019b), prohibiting "during the present emergency" houses of ill fame within the zone around military camps to be designated by the Secretary of War, *held* in effect on September 7, 1919, the date of an offense charged in an indictment.

Criminal prosecution by the United States against May Meyers. On demurrer to indictment. Overruled.

John E. Kinnane, U. S. Dist. Atty., of Detroit, Mich.
Louis W. McClear, of Detroit, Mich., for defendant.

TUTTLE, District Judge. This cause is before the court on demurrer to an indictment. The indictment, consisting of three counts, in appropriate terms charges the defendant with having, on September 7, 1919, willfully, unlawfully, and knowingly set up and kept a house of ill fame, received and permitted to be received for immoral purposes certain persons in said house, and permitted said persons to remain for said immoral purposes in said house, all in violation of a certain regulation established by the Secretary of War on August 1, 1918, as authorized by section 13 of the Act of Congress of May 18, 1917, as amended, commonly known as the Selective Service Law.

By the demurrer it is alleged that the indictment charges no offense under the federal statutes and that said section 13 has been repealed. Section 13 of the act just referred to, as originally enacted, provided that—

> "The Secretary of War is hereby authorized, empowered, and directed during the present war to do everything by him deemed necessary to suppress and prevent the keeping or setting up of houses of ill fame, * * * and any person * * * receiving or permitting to be received for immoral purposes any person into any place * * * used for the purpose of lewdness, assignation, or prostitution within such distance of said places as may be designated, or shall permit any such person to remain for immoral purposes in any such place, structure, or building as aforesaid, or who shall violate any order, rule, or regulation issued to carry out the objec; and purpose of this section," should be punished as therein provided.

On July 9, 1918, the section just quoted was amended so as to read as follows:

"During the present emergency it shall be unlawful, within such reasonable distance of any military camp, station, fort, post, cantonment, training or mobilization place as the Secretary of War shall determine to be needful to the efficiency and welfare of the army, and shall designate and publish in general orders or bulletins, to engage in prostitution or to aid or abet prostitution or to procure or solicit for purposes of prostitution, or to keep or set up a house of ill fame, brothel, or bawdyhouse, or to receive any person for purposes of lewdness, assignation, or prostitution into any vehicle, conveyance, place, structure, or building, or to permit any person to remain for purposes of lewdness, assignation, or prostitution in any vehicle, conveyance, place, structure, or building."

It was further provided that any person violating the provision of this statute should be punished by the same penalty as that fixed in the statute before being so amended, and the Secretary of War was authorized "to do everything by him deemed necessary to suppress and prevent violation thereof." Pursuant to this statute, as so amended, on August 1, 1918, the Secretary of War established and published the following regulation as quoted in the indictment:

"Ten miles from any military camp, station, fort, post, cantonment, training or mobilization place is hereby designated as the distance determined to be needful to the efficiency and welfare of the army, within which it shall be unlawful to engage in prostitution or to aid or abet prostitution or to procure or solicit for purposes of prostitution, or to keep or set up a house of ill fame, brothel, or bawdyhouse, or to receive any person for purposes of lewdness, assignation, or prostitution into any vehicle, conveyance, place, structure or building; or to permit any person to remain for purposes of lewdness, assignation or prostitution in any vehicle, place, structure or building."

It has been decided by the United States Supreme Court that under its express constitutional power to raise and support armies, and its consequent implied power to make rules and regulations for the protection of the health and welfare of the soldiers composing such armies, Congress was authorized to enact the statute under consideration as a restriction designed to guard and promote the health and efficiency of the army, and properly left the details concerning the enforcement of such statute to the regulation of the Secretary of War, and provided for the punishment of those violating such regulation. McKinley v. United States, 249 U. S. 397, 39 Sup. Ct. 324, 63 L. Ed. 668. Any objections, therefore, to the constitutionality of the statute in question, must be overruled.

The contention of defendant is that section 13 of the Selective Service Law as originally passed by Congress prohibiting the doing of the things therein mentioned "during the present war" has been superseded by the amendment of July 9, 1918, hereinbefore quoted, making unlawful the doing of said things "during the present emergency"; and as I understand the position of defendant, it is to the effect that the emergency thus mentioned had passed at the time of the alleged commission of the crime charged in this indictment. The only authority cited by counsel for defendant is the case of United States v. Hicks, 256 Fed. 707, in which the District Court for the Western District of Kentucky held that the "present war," referred to in the statute as originally enacted, had been, by the public statement of the President to Congress on November 11, 1918, to the effect that "the war thus

comes to an end," shown prima facie, and in the absence of evidence to demonstrate "the inaccuracy of the President's statement," in the language of the court, to have been, in fact terminated, and that this would make said statute inoperative after the date just mentioned.

Whether the words "present emergency," as used in the amendment of July 9, 1918, and in force at the time of the commission of the alleged offense charged in the present indictment, has or has not a different meaning than the words "present war," found in the statute before the enactment of such amendment, it is now settled by the United States Supreme Court, in an opinion filed December 15, 1919, that neither such war nor such emergency had terminated up to at least October 10, 1919, which was more than a month after the date of the commission of said alleged offense involved herein. Hamilton v. Kentucky Distilleries & Warehouse Co., 251 U. S. 146, 40 Sup. Ct. 106, 64 L. Ed. ——. The grounds upon which the decision in the last-cited case was based are so fully and clearly stated in the opinion therein that it is unnecessary and would be superfluous to repeat or restate them here.

In my opinion, the decision in that case controls the disposition of the present case, and an order must be entered overruling the demurrer.