# UNITED STATES EX REL. FRENCH v. WEEKS, SECRETARY OF WAR.

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 724. Argued April 20, 1922.—Decided May 29, 1922.

1. The Army Reorganization Act of June 4, 1920, c. 227, § 24b, 41 Stat. 773, provides (1) for a preliminary classification of all officers into two classes, A, those who should be, and B, those who should not be, retained in the service; (2) for a hearing of those placed in class B, before a Court of Inquiry, and (3) for a reconsideration of each case so heard by a Final Classification Board whose finding, it declares, "shall be final and not subject to further revision except upon the order of the President." *Held:*

(a) That review of a finding of the Final Classification Board placing an officer in class B is discretionary with the President, not a right of the officer, and that the finality of the Board's action is not dependent on the President's approval, either personal or delegated. P. 332.

(b) The power of the President to approve such findings may be exercised, on his behalf and under his authority, by the Secretary of War. P. 334.

2. Proceedings of lawfully constituted military tribunals, acting within the scope of their lawful authority, with jurisdiction over the person and subject-matter involved, cannot be reviewed or set aside by the civil courts by mandamus or otherwise. P. 335.

277 Fed. 600, affirmed.

ERROR to a judgment of the Court of Appeals of the District of Columbia, which reversed a judgment of the Supreme Court of the District granting the writ of mandamus against the present defendant in error and dismissed the proceeding. See also the next case, *post*, 336.

Mr. *Samuel T. Ansell* and Mr. *Charles Pope Caldwell*, with whom Mr. *Edward S. Bailey* was on the brief, for plaintiff in error. For a summary of their argument in this and the next succeeding case, see *post*, 337.

*Mr. Solicitor General Beck* and *Mr. Frederick M. Brown* for defendant in error.

*Mr. Daniel Wilkinson Iddings,* by leave of court, filed a brief as *amicus curiæ.*

Mr. Justice Clarke delivered the opinion of the court.

In the petition in this case a writ of mandamus is prayed for, commanding the Secretary of War to annul an order by him, purporting to have been made by direction and authority of the President, approving the action of a final classification board and retiring the relator, Colonel John W. French, from active service in the Army, under the provisions of § 24b of the Army Reorganization Act, approved June 4, 1920, c. 227, 41 Stat. 759, 773, and to restore him to the status of a Colonel of Infantry which he had before the order. The Secretary of War filed an answer and a demurrer thereto being sustained, the writ was allowed by the Supreme Court of the District of Columbia, as prayed for. This judgment was reversed by the Court of Appeals of the District of Columbia and the case is here on writ of error for construction of the statute and on the question of the jurisdiction of the court to issue a writ of mandamus in such a case.

The Army Reorganization Act is intended to provide for a reduction of the Army of the United States to a peace basis while maintaining a standard of high efficiency. To contribute to this purpose, Congress made elaborate provision in the act for retaining in the service officers who had proved their capacity and fitness for command and for retiring or discharging those who, for any reason, were found to be unfit. Every step of this process is committed to military tribunals, made up of officers, who by experience and training should be the best qualified men in the country for such a duty, but with their action all subject, as we shall see, to the supervisory control of the President of the United States.

Not being in any sense a penal statute, the act should be liberally construed to promote its purpose, and it is of first importance that that purpose shall not be frustrated by unnecessarily placing technical limitations upon the agencies which are to carry it into effect. *Street* v. *United States,* 133 U. S. 299.

Section 24b deals only with the " Classification of Officers," and is printed in the margin.[1]  The process provided by the section for classifying and reducing the number of officers, is as follows:

First: The President shall convene a board of not less than five general officers, which shall arrange all officers in two classes, viz: " Class A, consisting of officers who should be retained in the service, and Class B, of officers who should not be retained in the service." This classification is tentative and since it is intended simply to furnish a basis for further action the board will be referred

---

[1] " Sec. 24b.  Classification of Officers.—Immediately upon the passage of this Act, and in September of 1921 and every year thereafter, the President shall convene a board of not less than five general officers, which shall arrange all officers in two classes, namely: Class A, consisting of officers who should be retained in the service, and Class B, of officers who should not be retained in the service. Until otherwise finally classified, all officers shall be regarded as belonging to Class A, and shall be promoted according to the provisions of this Act to fill any vacancies which may occur prior to such final classification. No officer shall be finally classified in Class B until he shall have been given an opportunity to appear before a court of inquiry. In such court of inquiry he shall be furnished with a full copy of the official records upon which the proposed classification is based and shall be given an opportunity to present testimony in his own behalf. The record of such court of inquiry shall be forwarded to the final classification board for reconsideration of the case, and after such consideration the finding of said classification board shall be final and not subject to further revision except upon the order of the President. Whenever an officer is placed in Class B, a board of not less than three officers shall be convened to determine whether such classification is due to his neglect, misconduct or avoidable habits. If the find-

to herein as the " Preliminary Classification Board." No exception is taken as to the manner in which this board was convened or as to its composition.

Second: If, when an officer is notified that he has been placed in Class B by the Preliminary Classification Board, he shall request, as Colonel French did, an opportunity to appear before a Court of Inquiry, then " he shall be furnished with a full copy of the official records upon which the proposed classification is based and shall be given an opportunity to present testimony in his own behalf."

The powers and procedure of such a Court of Inquiry are not defined in the section, but their definition is found in c. II of the act, being Articles of War 97 to 103, inclusive (41 Stat. 807) in which it is provided, that such a Court of Inquiry " shall consist of three or more officers " (Art. 98), that it " shall not give an opinion on the merits

ing is affirmative, he shall be discharged from the Army; if negative, he shall be placed on the unlimited retired list with pay at the rate of 2½ per centum of his active pay multiplied by the number of complete years of commissioned service, or service which under the provisions of this Act is counted as its equivalent, unless his total commissioned service or equivalent service shall be less than ten years, in which case he shall be honorably discharged with one year's pay. The maximum retired pay of an officer retired under the provisions of this section prior to January 1, 1924, shall be 75 per centum of active pay, and of one retired on or after that date, 60 per centum. If an officer is thus retired before the completion of thirty years' commissioned service, he may be employed on such active duty as the Secretary of War considers him capable of performing until he has completed thirty years' commissioned service. The board convened upon the passage of this Act shall also report the names of those second lieutenants of the Quartermaster Corps who were commissioned under the provisions of section 9 of the Act of June 3, 1916, who are not qualified for further promotion. The officers so reported shall continue in the grade of second lieutenant for the remainder of their service and the others shall be placed upon the promotion list according to their commissioned service, as hereinbefore provided."

of the case inquired into unless specially ordered to do so " (Art. 102), and that " it shall keep a record of its proceedings, which shall be . .. . forwarded to the convening authority." (Art. 103.) In this case, however, § 24b provides that the record of the Court of Inquiry shall be forwarded to the Final Classification Board.

Third: After a hearing has been had by a Court of Inquiry the section requires that its record shall be forwarded to the Final Classification Board for reconsideration of the case, " and after such consideration *the finding of said classification board shall be final and not subject to further revision except upon the order of the President.*"

No objection is made in this court to the manner of the convening nor to the membership of this Board.

Fourth: After the Final Classification Board has made a finding, if the President does not order further revision and the officer who has demanded the Court of Inquiry is continued in Class B, then the section provides that another " board of not less than three officers shall be convened to determine whether such classification is due to his neglect, misconduct or avoidable habits. If the finding is affirmative, he shall be discharged from the Army; if negative, he shall be placed on the unlimited retired list with pay," as provided in the section.

This board will be hereinafter referred to as the " Honest and Faithful Board," a name by which it is commonly and widely designated. The action of this board is not and could not be complained of for it was favorable to the relator.

It is to be observed that there is no requirement in the section that the officer whose case is under consideration shall either be notified of the hearing or that he shall be heard, by any of the tribunals thus provided for, except the Court of Inquiry.

The facts essential to the decision of the case, derived from the allegations of the petition not denied in the

answer and from the allegations of the answer admitted by the demurrer, are as follows: When the relator was notified that he had been tentatively placed in Class B as an officer not to be retained in the Army, he requested a Court of Inquiry, which was thereupon convened. He appeared before that court, was represented by counsel, and was given an opportunity to present testimony of himself and others in his behalf of which he availed himself.

The record of the Court of Inquiry was forwarded to the Final Classification Board for reconsideration of the case, but the classification of relator in Class B was adhered to by that board, and was approved by the Secretary of War, under authority from the President, which, it is averred and admitted by the demurrer, was given to him prior to any determination in the relator's case. Prior to the submission of the record of the Final Classification Board to the Honest and Faithful Board for the purpose of having determined the cause of the relator's classification, the Secretary of War, " acting on behalf of and by the authority of the President," signed at the foot of that record the notation: "Approved: Baker, Secretary of War." After the Honest and Faithful Board had determined that relator's classification was not due to his own neglect, misconduct or avoidable habits, he was retired from service by the following order:

" Washington, D. C., December 24, 1920.

" The action of the Classification Board in finally classifying Colonel John W. French, Infantry, in Class B, is approved by the President, and, by his direction, a board of officers having determined that such classification is not due to the officer's neglect, misconduct or avoidable habits, Colonel French is retired from active service, after twenty-two years of commissioned service, under the provisions of section 24b of the act of Congress approved June 4, 1920.

" NEWTON D. BAKER,
" *Secretary of War.*"

Newton D. Baker having been succeeded by John W. Weeks as Secretary of War, Secretary Weeks was substituted as defendant in the case.

While there are allegations in the petition that various formalities in the procedure prescribed by § 24b were not complied with, reliance is not placed upon any of these, in the assignments of error in this court and in argument the relator presses only one question upon our attention for decision, viz:

It is contended that § 24b imposes a personal, non-delegable, judicial duty upon the President, to review the record of the Board of Final Classification in each case after it has made a finding, and by his order, to approve or disapprove it, and that because the approval in this case was not made by the President personally but by the Secretary of War, acting under delegated general direction and authority from the President, it is void and must be so treated.

The construction of the section thus contended for, obviously, would place such a burdensome, if not impossible, personal duty upon the President during the process of reducing the Army from a war to a peace basis that if Congress had intended to attempt such a thing, we may be sure its purpose would have been clearly expressed, and not left to doubtful implication.

The argument for the relator is bottomed entirely upon the use of the words " except upon the order of the President," for there is nothing else in the section suggesting participation by the President after the convening of the Preliminary Classification Board, and we are thus brought to consider the construction which should be placed upon these seven words.

To give the effect claimed for the words by the relator would result in denying any meaning whatever to the clear and emphatic declaration immediately preceding them that " the finding of said classification board shall

be final and not subject to further revision," for it would render such finding ineffective in every case until approved by the President, and then, of course, its effect and finality would be derived from the President's approval and not from the finding of the Board, which would be rendered, at most, merely advisory. Familiar principles (*United States* v. *Gooding,* 12 Wheat. 460; *Peck* v. *Jenness,* 7 How. 612; *Montclair* v. *Ramsdell,* 107 U. S. 147), forbid the acceptance of such a construction save under the compulsion of a clear expression of congressional purpose, such as is not to be found in either the section or the act we are considering.

But both the meaning and purpose of the entire expression seem very clear. The declaration that the finding of the Final Classification Board shall be " final and not subject to further revision " could not be more emphatically worded, while the exception " upon the order of the President " is in such general terms that it plainly contemplates only discretionary action on his part to be taken, on the suggestion of the Secretary of War in special cases, on the application of officers involved or their friends, or on his own " mere motion." The exception plainly enough was inserted, not for the purpose of imposing a very great burden upon the President, but rather as a congressional recognition of the right in him as the Chief Executive and Commander-in-Chief of the Army (a right which he probably would have had without it), to interfere in such cases at his option, leaving the finding of the Board to become final should he elect not to take any action, and perhaps, also, for the purpose of forestalling the chance of its being successfully argued that the unusual finality—" not subject to further revision "— given to the finding of the Board, was intended to place such finding beyond the power of interposition in any case by the President. This construction gives consistent effect to each clause of the provision and that contended for by the relator must be denied.

In support of his contention, which has thus been rejected, the relator relies upon *Runkle* v. *United States,* 122 U. S. 543; *United States* v. *Page,* 137 U. S. 673, and *United States* v. *Fletcher,* 148 U. S. 84. All of these were court-martial cases, conducted under authority of the then 65th Article of War (2 Stat. 367, c. 20), which prescribed that the sentence of such a court in cases such as were there under consideration should not be carried into execution " until after the whole proceedings shall have been transmitted to the Secretary of War, to be laid before the President of the United States, for his confirmation or disapproval, and orders, in the case." It was held, obviously enough, that the quoted language called for personal review and action by the President and that making him, as it did, in effect, a member of the court, the required review was judicial in character and therefore nondelegable. The difference between such a statute and the one we have here renders these decisions too plainly inapplicable for discussion.

Under the construction of § 24b thus arrived at neither personal nor delegated approval by the President of the finding by the Final Board of Classification was necessary before action by the Honest and Faithful Board, and, if no action whatever had been taken by him through the agency of the Secretary of War, that finding, by force of the express words of the statute, would have become " final and not subject to further revision," and thereupon the case would have been ripe for the further action prescribed by the statute.

Since the section did not require personal action by the President, the action on his behalf and by his authority, taken by the Secretary of War, was in a legally sufficient form. Rev. Stats., § 216; *Wilcox* v. *Jackson,* 13 Pet. 498, 513; *Williams* v. *United States,* 1 How. 290, 297; *Chicago, Milwaukee & St. Paul Ry. Co.* v. *United States,* 244 U. S. 351, 357.

But the Court of Appeals held that the action of the Secretary of War, which is assailed in the case, was taken in the exercise of duly delegated administrative power of the President and was really executive action by him which the courts may not control by mandamus or otherwise and that, therefore, the judgment of the Supreme Court of the District of Columbia was without jurisdiction and void.

As a Colonel in the Army, the relator was subject to military law and the principles of that law, as provided by Congress, constituted for him due process of law in a constitutional sense. *Reaves* v. *Ainsworth,* 219 U. S. 296, 304.

By the demurrer it is admitted that the three Boards and the Court of Inquiry, provided for by § 24b, were lawfully convened and constituted. They obviously had jurisdiction over the relator and over the subject-matter involved, and there is no contention that any of them exceeded the scope of its lawful powers. The only infirmity claimed to exist in the entire proceeding is, that the review and approval of the findings of the Final Classification Board and the ultimate order retiring relator from the Army, were made by the Secretary of War, " acting in the name of and by the authority of the President," instead of by the President personally. But we have found this contention unsound and that the action of the President by the Secretary was a legally sufficient compliance with the act of Congress.

Thus we have lawfully constituted military tribunals, with jurisdiction over the person and subject-matter involved unquestioned and unquestionable, and action by them within the scope of the power with which they are invested by law. It is settled beyond controversy that under such conditions decisions by military tribunals, constituted by act of Congress, cannot be reviewed or set aside by civil courts in a mandamus proceeding or otherwise. *Johnson* v. *Sayre,* 158 U. S. 109, 118; *Carter* v. *Mc-*

Claughry, 183, U. S. 365, 380, 381; Mullan v. United States, 212 U. S. 516, 520; Collins v. McDonald, 258 U. S. 416.

"If it were otherwise, the civil courts would virtually administer the rules and articles of war, irrespective of those to whom that duty and obligation has been confided by the laws of the United States, from whose decisions no appeal or jurisdiction of any kind has been given to the civil magistrate or civil courts." Dynes v. Hoover, 20 How. 65, 82.

It results that, because the action of the President, given effect by the order of the Secretary of War, was in full compliance with the act of Congress, and also because the Supreme Court did not have jurisdiction to order the writ of mandamus prayed for, the judgment of the Court of Appeals reversing the judgment of that court must be

                                        Affirmed.