**HURLEY, Secretary of War, et al. v. UNITED STATES ex rel. GLADMAN.**

**No. 5287.**

Court of Appeals of District of Columbia.

Argued Jan. 7, 1931.

Decided Feb. 2, 1931.

Leo A. Rover and J. W. Fihelly, both of Washington, D. C., for appellants.

H. Winship Wheatley, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice.

Appeal from a judgment in the Supreme Court of the District overruling the demurrer to relator's petition for the issuance of a common-law writ of certiorari, and granting the writ.

On February 5, 1924, relator, Harry E. Gladman, was commissioned a lieutenant colonel in the National Guard of the District of Columbia. On May 21, 1928, he received a communication from Lieutenant Colonel Thorne Strayer, Inspector General's Department, War Department, advising him that, "under the provisions of section 93, national defense act," Colonel Strayer had been "detailed by the Secretary of War to make an inspection for the purpose of determining

whether Federal recognition should be with-- drawn from you (Colonel Gladman)," and that, if Colonel Gladman would come to his office, "a procedure in this matter will be agreed upon that will facilitate the investigation and assure to you an opportunity to have presented in your behalf all the evidence, testimonial and documentary, that you may desire secured." Upon receipt of the communication, Colonel Gladman forthwith interviewed Colonel Strayer at the War Department, and was informed that when he was needed again he would be sent for.

Thereafter, on June 29, 1928, at the request of Colonel Strayer, he again went to the War Department, and "Colonel Strayer asked the relator (Colonel Gladman) to be sworn and read to him excerpts from alleged efficiency reports made about him * * * and asked the relator what he had to say about these ratings and estimates." The statements were not sworn, and Colonel Gladman had no opportunity to cross-examine the persons who had made them. Colonel Strayer also on this occasion read to Colonel Gladman extracts from statements given by the regimental commander and by Colonel Anderson, inspector-instructor of the Regular Army, and asked Colonel Gladman what he had to say regarding them. Thereupon Colonel Gladman "demanded to know what the charges were against him and that he have permission for counsel. Neither was accorded to him."

Later, on July 16, 1928, he again appeared before Colonel Strayer with several witnesses whom he desired heard; the relator asked to be present while the statements of the witnesses were taken, and this was refused.

On August 14, 1928, Colonel Gladman received by mail from the Chief of the Militia Bureau, War Department, notice that the records of the Militia Bureau had been amended to show "that the status of Harry Eastburn Gladman as lieutenant colonel, Engrs., of the active National Guard of Dist. of Columbia, was terminated on the 14th Aug., 1928, by direction of Sec. of War."

On August 27, 1928, Colonel Gladman received from the adjutant general, National Guard of the District of Columbia, notice that he was "honorably discharged from the National Guard of the United States and District of Columbia by reason of the withdrawal of Federal recognition on August 14th, 1928."

Contending that the proceedings resulting in his discharge did not constitute due process of law, he prayed the issuance of the writ of certiorari, that the entries of the War Department purporting to terminate his status as a lieutenant colonel of the National Guard of the District of Columbia and honorably discharging him therefrom be quashed, and that his "status with the National Guard of the District of Columbia be restored." The court below ordered that the prayers of the petition be granted.

Section 93 of the National Defense Act of June 3, 1916 (39 Stat. 166, 206 [U. S. Code, tit. 32, § 15, 32 USCA § 15]), provides that "the Secretary of War shall cause an inspection to be made at least once each year" by inspectors general, and if necessary by other officers of the Regular Army, "to determine whether the amount and condition of the property in the hands of the National Guard is satisfactory; whether the National Guard is organized as hereinbefore prescribed; *whether the officers and enlisted men possess the physical and other qualifications prescribed;* whether the organization and the officers and enlisted men thereof are sufficiently armed, uniformed, equipped, and being trained and instructed for active duty in the field or coast defense; and whether the records are being kept in accordance with the requirements of this Act." That "the reports of such inspections shall serve as the basis for deciding as to the issue to and retention by the National Guard of the military property provided for by this title, *and for determining what organizations and individuals shall be considered as constituting parts of the National Guard within the meaning of this Act."* (Italics ours.)

It is the contention of the War Department that the purpose of this statute was to provide summary means to eliminate from the federally recognized National Guard unfit organizations and individuals. On the other hand, counsel for relator contends that it is "a pure inspection statute and that the power to relieve an officer of his duties is contained in section 77 of the National Defense Act" (U. S. Code, tit. 32, § 114, 32 USCA § 114), which provides that "the moral character, capacity, and general fitness for the service of any National Guard officer" may at any time be determined by an efficiency board of three commissioned officers.

Section 1461, c. 8, T. 20, D. C. Code (section 19 of Act of February 18, 1909, 35 Stat. 629, 631), relating to the militia of the District, provides that whenever, in the opinion of the commanding general of the militia of the District of Columbia, an officer has become

incapacitated for the performance of duty for any reason, the commanding general shall submit the name of such officer to the Secretary of War, "with a view to his being ordered before a board of examination, to be appointed by the Secretary of War, which board shall examine said officer as to his physical, mental, and military qualifications."

The provisions of the National Defense Act must be considered as a whole. The act not being in any sense a penal statute, section 93 must be accorded a liberal interpretation "to promote its purpose." French v. Weeks, 259 U. S. 326, 328, 42 S. Ct. 505, 506, 66 L. Ed. 965. We think the purpose of this section was to authorize the War Department summarily to withdraw federal recognition from organizations and individuals found upon inspection lacking in the qualifications prescribed by the act; in other words, to eliminate them from the National Guard so far as the federal government is concerned. The language of the section is sufficiently broad to include all National Guard units. There is no apparent reason why it should receive a more limited application. The immediate elimination from the National Guard of the District of Columbia of officers lacking the requisite qualifications was as much to be desired as the immediate elimination of similar officers from the National Guard of the states.

Section 93 directs the Secretary of War to cause an inspection of the National Guard "at least once each year." Such an inspection was made in the present case by a duly qualified officer; the subject of the inquiry being whether the relator possessed "the physical and other qualifications" prescribed by the act. Presumably the inspector reported against the relator. Thereupon the Secretary of War, in his executive and administrative capacity, determined that the relator no longer should constitute part of the National Guard of the District of Columbia.

Section 93 does not contemplate a trial in the ordinary sense. A much more expeditious procedure is necessary in military than is thought tolerable in civil affairs. "Besides, what is due process of law must be determined by circumstances. To those in the military or naval service of the United States the military law is due process. The decision, therefore, of a military tribunal acting within the scope of its lawful powers cannot be reviewed or set aside by the courts. * * * The courts are not the only instrumentalities of government. They cannot

command or regulate the Army. To be promoted or to be retired may be the right of an officer, the value to him of his commission, but greater even than that is the welfare of the country, and, it may be, even its safety, through the efficiency of the Army." Reaves v. Ainsworth, 219 U. S. 296, 304, 306, 31 S. Ct. 230, 233, 55 L. Ed. 225; Creary v. Weeks, 259 U. S. 336, 42 S. Ct. 509, 66 L. Ed. 973.

In the present case, the War Department had jurisdiction of the person of the relator as a National Guard officer and over the subject of the inquiry. The question to be determined affected the status of the relator in the National Guard as a soldier, and was therefore distinctly military in its nature. In such circumstances, the action of the War Department cannot be reviewed or set aside by the courts.

The withdrawal of federal recognition to an officer of the National Guard of a state does not terminate his status as a state officer. Const. art. 1, § 8, cl. 16. Here there is no intervening sovereignty. The action of the Department in substance and effect terminated the status of the relator as an officer of the District National Guard.

The judgment must be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed.