TERRITORY OF HAWAII
*v.* SHIZUICHI YAMAMOTO.

NO. 2751.

TERRITORY OF HAWAII *v.* SEIICHI MASUDA.

NO. 2752.

TERRITORY OF HAWAII *v.* KICHIBEI SUEDA.

NO. 2753.

ARGUED MAY 16, 1952.          DECIDED OCTOBER 29, 1952.

TOWSE, C. J., LE BARON, J., AND CIRCUIT JUDGE BROWN
IN PLACE OF STAINBACK, J., DISQUALIFIED.

OPINION OF THE COURT BY TOWSE, C. J.

The defendants were separately charged in the district court with violation of section 11192 of the Revised Laws of Hawaii 1945 for having in their possession a flag or flags "of the Empire of Japan, a nation with which the United States is at war, and during a time of the existence of war between the United States and Japan; without having a written permit from the Secretary of Hawaii for possession of such flag(s) in accordance with the rules and regulations promulgated thereunder by the Governor of the Territory of Hawaii, contrary to law."

They were found guilty and in each case sentenced to pay a fine of $1,000 and to imprisonment for a period of 1 year. On appeal to the circuit court upon trial de novo, jury waived, all of the defendants were found guilty as charged. Yamamoto was fined $150 and sentenced to imprisonment for 15 days, the imprisonment suspended for a 13 month period. Masuda was fined $300 and sentenced to imprisonment for 30 days. Sueda was fined $100 and placed on probation for a period of 13 months.

The three cases are consolidated on appeal to this court upon writ of error. Eight errors are assigned upon which seven specifications are based. Five have been abandoned as well as portions of another.

The first of the remaining assignments raises the issue whether the regulation in question was promulgated in accordance with either the provisions of Act 19 of the Special Session Laws of Hawaii 1918, as amended, or of Act 7 of the Session Laws of Hawaii 1939, as amended. The regulation was enacted on March 2, 1943 by the governor of Hawaii. It provided:

"REGULATIONS RELATING TO THE POSSES-
SION OF ENEMY FLAGS

"Pursuant to the authority in me vested by Section 5792 of the Revised Laws of Hawaii 1935, I, INGRAM M. STAINBACK, Governor of Hawaii, do hereby prescribe the following regulations:

"SECTION 1. It shall be unlawful for any civilian to have in his possession any flag, standard, color, ensign or coat-of-arms (hereinafter referred to as an 'emblem') of any nation with which the United States is at war, or that of any state, subdivision, city or municipality of any such nation, except with the written permission of the Secretary of Hawaii.

"SECTION 2. A permit under Section 1 of these regulations shall be issued only if:

"(a) The emblem is of unusual intrinsic value and is a part of a bona fide collection;

"(b) Adequate precautions for the safe keeping of the emblem have been taken so as to prevent access thereto by any enemy alien;

"(c) The name of the person responsible for the safe keeping of the emblem is furnished; and

"(d) The matters set forth in paragraphs (a) and (b) are established by a written statement or statements under oath.

"SECTION 3. Any person possessing any emblem in violation of this rule and Section 5792 of the Revised Laws of Hawaii 1935 shall be deemed guilty of a misdemeanor and shall be punished as in said section provided.

"SECTION 4. Pursuant to the authority in me vested by Section 13 of Act 24 of the Special Session Laws of Hawaii 1941, I do hereby suspend the application hereto of Act 7 of the Session Laws of Hawaii 1939, as amended.

"DONE at Iolani Palace, Honolulu,
Territory of Hawaii, this
2nd day of March, 1943.
"INGRAM M. STAINBACK,
Governor of Hawaii.

"SEAL
"BY THE GOVERNOR:
ERNEST K. KAI,
Secretary of Hawaii."

Section 3 of Act 19 of the Special Session Laws of Hawaii 1918 provided in part: "Any person who, during the existence of war between the United States of America and any other nation or nations, shall have unlawfully in his possession any flag * * * of any nation with which the United States of America is at war * * * shall be deemed guilty of a misdemeanor and shall be punished by a fine of not more than one thousand dollars ($1,000.00) or by imprisonment for not more than one year, or by both such fine and imprisonment. The governor of Hawaii shall, as soon as possible, promulgate rules and regulations relating to the possession of any flag * * * of any nation with which the United States of America is at war * * * which rules and regulations when published three times in a newspaper of general circulation in the Territory shall have the force and effect of law."

The foregoing provisions of the Act of 1918 have been regularly reenacted at ten-year intervals since 1925 without amendment except as to the phrase "as soon as possible," which was deleted in 1925. (R. L. H. 1925, § 4529; R. L. H. 1935, § 5792; R. L. H. 1945, § 11192.)

It is admitted that the regulation in question was published as required by the terms of the Act of 1918; and it is noted that the enabling portion of the regulation is premised upon the Act of 1918, as amended. (R. L. H. 1935, § 5792.)

Act 7 of the Session Laws of Hawaii 1939 provides in part: "All officers who * * * have the power to make rules and regulations having the force and effect of law shall prior to the making of any rule or regulation, hold a public hearing upon such proposed rule or regulation of which notice shall first have been published in a newspaper of general circulation not less than four days before the date set for such hearing. Such notice shall state the time and place for such hearing and the general purpose of the proposed rule or regulation to be considered at such hearing."

Act 7 mandates the officers to whom the Act has delegated the power of promulgating regulations to hold public hearings, and to publish notice of such public hearings prior to promulgating regulations under this delegated authority.

Act 24 of the Special Session Laws of Hawaii 1941, the "M Day" Act, grants exclusively to the governor express powers of suspension of any laws or ordinances which are inconsistent with the Act itself. Section 13 of that Act further delegates to the governor the power of suspending laws inconsistent with the powers conferred upon him under the "M Day" Act or "Any laws or ordinances which are inconsistent with the powers conferred on the Governor under this Act, or which impede or tend to impede the expeditious execution of the provisions of this Act or in any way conflict with the purposes of this Act * * *." It is noted that this general power of suspension is not limited by the enumeration of the specific sections which the governor was empowered to suspend even during nonemergency periods.

We find that the Act itself (Act 24, Spec. Sess. Laws of Haw. 1941, § 13 of the "M Day" Act) is determinative of the issue presented. The portion immediately following the granting of the general power provides in part:

"Without prejudice to the generality of the foregoing or any provisions of this Act, the laws of the Territory which may be so suspended, in whole or in part, include the following: * * * Acts 7 * * * of the Session Laws of Hawaii 1939, including any amendments thereto; * * * the same may be suspended by the Governor as to any rules or regulations prescribed by him under this Act, whether or not a defense period has been declared." There are thus two separate and distinct powers granted by section 13. First, a general all-inclusive power to be exercised only in time of a declared defense period, and second, a more circumscribed power exercisable irregardless of whether or not a defense period has been declared. Act 7 of the Session Laws of Hawaii 1939 is specifically designated in the regulation, and is also singled out in the circumscribed power granted; and as to the latter, whether or not a defense period had been declared. The deterring effect of Act 7 and its amendments must be construed in the light that since it was apparently considered of sufficient import to include in the enumerated sections, it must also be considered as included in the general grant of powers to the governor to suspend laws which are inconsistent with the purposes of the "M Day" Act during a declared defense period.

Certainly, section 11192 of the Revised Laws of Hawaii 1945, the section under which the defendants were charged, furthers the purpose of the "M Day" Act when considered as a portion of the "Disloyalty Act." (R. L. H. 1945, c. 250, §§ 11190-11197.) The suspension of Act 7 of the Session Laws of Hawaii 1939, as amended, in its application to the promulgation of regulations relating to the offense in question, having been effected during a defense period, we find to have been clearly embraced within the powers of the governor at the time of enactment of the

regulation of March 2, 1943 and thus within the contemplation of section 13 of the "M Day" Act.

Upon the second issue, it is contended that no state of war existed between the United States and the Empire of Japan at the time of the charges, as required by the terms of the statute. (R. L. H. 1945, § 11192.) The plaintiffs in error were charged on May 2, 1946. This contention is predicated upon a proclamation of the President of the United States and upon the authority of *United States* v. *Switzer,* 6 Alaska 223 (March 1, 1920) and *United States* v. *Hicks,* 256 Fed. 707 (U. S. D. C., N. D. Ky. 1919). The *Hicks* case does sustain the contention of the plaintiffs in error were it not for the holding of *United States* v. *Meyers,* 265 Fed. 329 (April 16, 1920) which expressly repudiated the *Hicks* case and predicated its holding upon *Hamilton* v. *Kentucky Distilleries Co.,* 251 U. S. 146, 165, in these terms: "In the absence of specific provisions to the contrary the period of war has been held to extend to the ratification of the treaty of peace or the proclamation of peace (and authorities cited)."

The presidential proclamation which plaintiffs in error contend terminated the state of war between the United States and the Empire of Japan was issued on August 16, 1945 (Proc. No. 2660, 59 Stat. 878 [1945]). It provides in part: "The War Lords of Japan and the Japanese armed forces have surrendered. They have surrendered unconditionally." This proclamation falls far short of proclaiming either an end to the state of war or of hostilities either expressly or by reasonable inference when viewed in the light of conditions then existing. In further support of this conclusion we find a later presidential proclamation of December 31, 1946 (Proc. No. 2714, 61 Stat. 1048 [1947]), which in our opinion in fact terminated hostilities in the following terms: "* * * Although a state

of war still exists, it is at this time possible to declare, and I find it to be in the public interest to declare, that hostilities have terminated. NOW, THEREFORE, I HARRY S. TRUMAN, President of the United States of America, do hereby proclaim the cessation of hostilities of World War II, effective twelve o'clock noon, December 31, 1946."

That the existence of war does not terminate until the issuance of a presidential proclamation of peace has been held in *Hamilton* v. *Kentucky Distilleries Co., supra,* which case was quoted with approval in the later case of *Kahn* v. *Anderson,* 255 U. S. 1. Upon the precise question before us, the court in *Citizen's Protective League* v. *Clark,* 155 F. (2d) 290, 295 (May 2, 1946), states: "Appellants say that the war has terminated and that, therefore, the Act, even if valid, is not in effect. No peace treaty has yet been signed with Germany, and the state of war has not been terminated by Act of Congress or by Executive Proclamation * * * it is not for the courts to determine the end of a war declared by the Congress." In May of 1946 the supreme court of Florida in *Dubisson* v. *Simmons,* 157 Fla. 473, 26 So. (2d) 438, 440, held: "These proclamations [2651 and 2660] * * * fall far short of a declaration that a state of war no longer existed between the United States and * * * the Government of Japan."

We find that the offenses with which the defendants below were charged, having been committed on the 29th day of April 1946, were committed during the "existence of war" between the United States and the Empire of Japan.

The contention is made that the statute (R. L. H. 1945, § 11192) fails to define a crime with sufficient clarity to enable a defendant to be apprised of whether bare possession of a flag constitutes an unlawful possession and an offense under its provisions. In other words that the

terms "shall have unlawfully in his possession any flag" designate only an unlawful possession, and does not define lawful possession. We find section 11192 clear and unambiguous, and its provisions expressly prohibiting any person from having unlawful possession of a flag of any nation with which the United States is at war. The further fact that the unlawful possession is limited to flags of nations with which the United States is at war, clearly indicates that the purport of the section is to declare all such possession to be unlawful during time of war, subject to the rule-making power of the governor to ameliorate the harshness of the general prohibition set forth in the statute. The word "unlawful" has been construed to mean without legal justification or excuse, without legal authority, or right. (*Jabich* v. *People,* 58 Colo. 175, 143 Pac. 1092; *State* v. *Tinkler,* 72 Kan. 262, 83 Pac. 830; *State* v. *Conrad,* 322 Mo. 246, 14 S. W. [2d] 608.) It is also noted that the legislature since 1918 has reenacted Act 19 of the Special Session Laws of Hawaii 1918, and during that time the words "as soon as possible," which related to the governor's promptness in promulgating regulations, was omitted from the first reenactment in 1925 and has since been reenacted in that form. (R. L. H. 1925, § 4529; R. L. H. 1935, § 5792; R. L. H. 1945, § 11192.) It is manifest from this continued reenactment that the legislature was well aware that the statute had not become moot, as contended. The last reenacment must be accorded great weight, since the governor had, in the interim, promulgated regulations which did interpret its provisions from the executive viewpoint and the express authority to promulgate the regulation. The legislature, cognizant of this fact, reenacted the Act verbatim, and in so doing expressly approved the governor's power of promulgating regulations thereunder.

This court in *Gomes* v. *Campbell,* 37 Haw. 252, 257, announced the applicable rule of interpretation. "The

interpretation of a statute by the legislative department of the government may go far to remove doubt as to its meaning. This fact is recognized by the courts which regard it as proper, in determining the meaning of a statute, to take into consideration subsequent action of the legislature, or the interpretation which the legislature subsequently places upon the statute. There are no principles of construction which prevent the utilization by the courts of subsequent enactments or amendments as an aid in arriving at the correct meaning of a prior statute, and it is very common for a court, in construing a statute, to refer to subsequent legislation as impliedly confirming the view which the court has decided to adopt. Indeed, it has been held that if it can be gathered from a subsequent statute in pari materia what meaning the legislature attached to the words of a former statute, they will amount to a legislative declaration of its meaning, and will govern the construction of the first statute."

It is contended that section 11192 of the Revised Laws of Hawaii 1945 is an arbitrary exercise of police power. We find that the section, dealing as it does directly with the public welfare, safety, and security during periods of war, is designed not only to serve to protect and minimize occasions of public disturbances but also to protect the individual citizenry from possible public ire, anger, indignation or physical harm resulting from bare possession of a flag of an enemy nation during those periods.

The Supreme Court of the United States in *Shelvin-Carpenter Co.* v. *Minnesota,* 218 U. S. 57, 58, states the applicable principle: "The mere fact that a state police statute punishes an offense actually committed without regard to intent does not render the statute unconstitutional under the due process clause of the Fourteenth Amendment." In the lower court's decision of that case it was held that statutes which do not require intent are

analagous "to the statutes prohibiting the sale of liquor to minors, in construing which the courts uniformly hold that the honest belief of the person making the sale that the minor was of age is no defense; and to statutes prohibiting the sale of adulterated foods, where it is held that persons selling articles of food must know at their peril whether they are adulterated." (*State* v. *Shelvin-Carpenter Co.,* 99 Minn. 158, 166, 108 N. W. 935.) And further at page 164: "One of the exclusive provinces of the legislative department of government is to declare what acts or omissions shall constitute a crime, to define the same, and provide such punishment therefor as may be deemed appropriate; * * *." In the facts presented in the record before us we find no lack of due process in that the statute does not require knowledge of possession of prohibited flags. Actual or constructive possession is a personal right in time of peace. In time of war, divestiture or permissive custody becomes an attaching responsibility to that right under the provisions of the statute.

The statute thus makes possession of the prohibited flags prima facie unlawful, subject to the governor promulgating regulations upon specific lawful possession. In the instant case, and by lawful promulgation, regulations within the statutory framework exempting certain flags under the conditions enumerated constituted a subsidiary policy to the statute. This pattern of rule-making has been consistently approved. (*Yakus* v. *United States,* 321 U. S. 414; *Mutual Film Corp.* v. *Industrial Commission of Ohio,* 236 U. S. 230.) In *United States* v. *Louisville & Nashville Railroad Co.,* 176 Fed. 942, the court had under consideration a broad Federal Act governing the quarantine and shipment of cattle, and granting the Secretary of Agriculture broad rule-making powers. A section of the Act forbade the shipment of cattle from quarantined territory "except as hereafter provided." The Act empowered the Secretary to promulgate rules under which

cattle might be shipped. It was held: "The effect of departmental regulations, *not ratified by Congress,* is confined to civil offenses." It is noted that in the instant cause the governor's regulations were ratified by the legislature when the section was reenacted in 1945, prior to the date of the offenses charged. That the secretary of Hawaii was given the authority to examine and approve applications for lawful possession of the prohibited flags does not of itself derrogate from the initial grant of power to the governor. Delegation of purely administrative authority and duties such as those in question have been uniformly upheld. (*French* v. *Weeks,* 259 U. S. 326.)

It is also contended that the information was defective in failing to recite that there was an exception contained in the statute and that it also failed to allege that the defendants were not within the exception, nor was there any proof to that effect. The defendants were charged in the words of the statute, and if there were any exceptions provided by the governor these were available to the defendants as affirmative defenses. It was not the province of the Territory to allege and prove that the defendants were not within the exception. (*Taylor* v. *United States,* 19 F. [2d] 813; *Byrd* v. *District of Columbia,* 43 A. [2d] 46; *Barfield* v. *State,* 59 Ga. App. 383, 1 S. E. [2d] 47; *State* v. *Pemberton,* 235 Mo. App. 1128, 151 S. W. [2d] 111; *People* v. *Tarlow,* 249 App. Div. 224, 291 N. Y. S. 918; *Commonwealth* v. *Harrison,* 137 Pa. Super. 279, 8 A. [2d] 733.) The burden of proof of affirmative defenses was upon the defendants, and their motions for acquittal were properly denied.

Judgments affirmed.

*E. N. Sylva* (*King & McGregor* with him on the brief) for plaintiff in error.

*A. M. Felix,* County Attorney of Hawaii County and Deputy Attorney General (also on the brief), for defendant in error.