George C. **UPDEGRAFF**, Appellant,

v.

Harold E. **TALBOTT**, Secretary of the Air Force of the United States, Appellee.

No. 6912.

United States Court of Appeals Fourth Circuit.

Argued March 8, 1955.

Decided April 12, 1955.

■■■■■■■■■■■■■■■■■■■■■■

———◆———

Harry L. Walker, Washington, D. C. (George C. Updegraff, Washington, D. C., pro se, on the brief), for appellant.

Sondra Kaplan, Atty., Dept. of Justice, Washington, D. C. (Warren E. Burger, Asst. Atty. Gen., L. S. Parsons, Jr., U. S. Atty., Norfolk, Va., and Benjamin Forman, Atty., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal from an order dismissing for lack of jurisdiction an action instituted by a former officer of the Army to require the Secretary of the Air Force to correct certain military records and lay them for action before the President of the United States. Appellant's object is to obtain the pecuniary benefits incident to retirement for disability received in the line of duty. He contends that records bearing upon his disability were improperly altered and that he was improperly denied retirement for disability received in the line of duty by both the Army Retiring Board and the Secretary of War's Disability Review Board. He asked mandatory injunction to require the Secretary of the Air Force to correct the records so as to show disability incurred in line of duty and to lay before the President, for the President's approval or disapproval, the proceedings and decisions of the Army Retiring Board and the Secretary of War's Disability Review Board. The facts as stated in the memorandum of the trial judge are as follows:

"In October 1940 the plaintiff was ordered to extended active military duty as a member of the infantry-reserve and subsequently was transferred to the Air Force. While on such duty, on October 23, 1943, he suffered an injury to his spine. He was immediately hospitalized, a surgical operation performed, and he was returned to temporary limited duty in the early part of 1944. In June of that year he requested to be relieved from active military service because of his injury. In August his request was approved and he was ordered to be relieved from active military service because of his injury. In August his request was approved and he was ordered to report to Walter Reed General Hospital, Washington, D. C. for terminal physical examination. Upon the finding of an Army Disposition Board on August 25, 1944 he was brought before an Army Retiring Board for consideration and action. The latter Board heard him on September 20, 1944. That same day the Board found the plaintiff incapacitated for active service but that 'said incapacity is not the result of an incident of service'. This finding was approved by the Surgeon General on October 16, 1944 and by the Secretary of War October 24, 1944. On the same day he was notified by the Adjutant General, acting on behalf of the Secretary of War, that 'It having been determined that this physical incapacity was not incurred in line of duty while on active duty as a commissioned officer, you are not entitled to retirement pay benefits. * * *'.

"Accordingly, he was placed on inactive status on November 28, 1944. On July 14, 1945 the plaintiff applied for a review of the proceedings of the Army Retiring Board and thereupon, on October 4, 1945, the Secretary of War's Disability Review Board heard his appeal. The Review Board on the same day affirmed the decision of the Army Retiring Board. On October 8, 1945 it was endorsed 'Approved by direction of the President: By order of the Secretary of War', the endorsement being signed by the Adjutant General. The action of neither

board had in fact been transmitted to the President. June 7, 1946, plaintiff applied for a rehearing. This was denied.

"In November 1946 the plaintiff instituted suit in the United States District Court for the District of Columbia against the Secretary of War questioning the validity of these administrative proceedings, which had resulted in his loss of retirement benefits. This action was stayed when the Secretary granted the plaintiff another hearing before the Army Retiring Board. That hearing was held in January 1948. It concluded that the plaintiff was not permanently incapacitated for active Service. This finding was afterwards concurred in by the Surgeon General and approved by the Secretary of the Army on April 5, 1948. The litigation was dismissed for procedural reasons on February 23, 1951. Updegraff v. Pace, Secretary, 88 U.S.App. D.C. 202, 188 F.2d 646.

"Finally, on January 2, 1952, the Army Air Force Board for Correction of Military Records reviewed the plaintiff's assertion that his record had been illegally altered and found no substance to the complaint."

The facts upon which appellant asks correction of records are that the Clinical Record Brief, bearing date of January 1, 1944, when appellant was returned to temporary limited duty, shows that the word "yes", in answer to the inquiry as to whether the disability had been incurred in line of duty, had been cancelled and the words "No E.P.T.A.D." inserted. The initials mean "Existed Prior to Active Duty". It does not appear by whom this change in the clinical record was made.

▆▆▆▆ Quite apart from the fact that the Army Retiring Board has twice given careful consideration to appellant's case, and that its action has been concurred in by the Surgeon General and

approved by the Secretary of the Army, we think that the action was properly dismissed. What was sought was a court order controlling executive officers of the government with respect to the exercise of powers vested in them by statute. An action asking such relief is a suit against the government which cannot be maintained because the government has not consented to be sued in the courts with respect thereto and also because the district courts are without power to grant writs of mandamus or, in cases such as this, mandatory injunctions, which in such cases are in effect writs of mandamus. Krug v. Fox, 4 Cir., 161 F.2d 1013, 1018–1020; Ainsworth v. Barn Ballroom Co., 4 Cir., 157 F.2d 97, 100–101; Appalachian Electric Power Co. v. Smith, 4 Cir., 67 F.2d 451, 457, certiorari denied 291 U.S. 674, 54 S.Ct. 458, 78 L.Ed. 1063; Wood v. Phillips, 4 Cir., 50 F.2d 714, 717–718; Ferris v. Wilbur, 4 Cir., 27 F.2d 262, 263. In Appalachian Electric Power Co. v. Smith, supra, 67 F.2d at page 457, we stated the applicable rule as follows:

"In the first place, the District Courts of the United States are without jurisdiction to issue writs of mandamus to control official action of executive officers of the government even where such writs would lie at common law. Covington & C. Bridge Co. v. Hager, 203 U.S. 109, 27 S.Ct. 24, 51 L.Ed. 111; Rosenbaum v. Bauer, 120 U.S. 450, 7 S.Ct. 633, 30 L.Ed. 743; Kendall v. United States, 12 Pet. 524, 618, 9 L.Ed. 1181; McClung v. Silliman, 6 Wheat. 598, 5 L.Ed. 340; McIntire v. Wood, 7 Cranch, 504, 3 L.Ed. 420. Consequently, even if this suit were treated as an application for mandamus, relief could not be afforded plaintiff. In the second place, any cancellation of orders or expunging of records would necessarily be done by defendants in their official capacity; and suits against them to compel action in their official capacity are suits against the United States, which cannot be maintained

**346**

as the United States has not consented to be sued."

▌ The jurisdiction of other District Courts of the United States to grant writs of mandamus must be distinguished from the jurisdiction of the United States District Court for the District of Columbia, which is clothed with the common law powers of courts of general jurisdiction of the State of Maryland. Kendall v. United States, supra, 12 Pet. 524, 622–625, 9 L.Ed. 1181.

▌ We do not think that appellant is helped by the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., which grants judicial review only of final agency action which is not committed to agency discretion and as to which judicial review is not precluded by statute. 5 U.S.C.A. § 1009. In so far as the action seeks correction of records or asks that records be laid before the President for action, it is seeking, not review of final action, but control of interlocutory proceedings. In so far as it seeks review of action by the Army Retiring Board or the Disability Review Board, it is asking judicial review of matters committed to agency discretion, as to which the statute precludes judicial review by providing for review by the President. 10 U.S.C.A. § 965; 38 U.S.C.A. 693i. As said by the Supreme Court in Chicago & Southern Air Lines, Inc., v. Waterman S. S. Corp., 333 U.S. 103, 113, 68 S.Ct. 431, 437, 92 L.Ed. 568, "The dilemma faced by those who demand judicial review of the Board's order is that, before Presidential approval, it is not a final determination even of the Board's ultimate action, and after Presidential approval, the whole order, both in what is approved without change, as well as in amendments which he directs, derives its vitality from the exercise of unreviewable presidential discretion."

▌ ▌ Appellant complains that the actions of the Retiring Board and the Disability Review Board were not reviewed by the President in person but by officials acting under him, and he contends that he is entitled to have the President personally pass upon his claim. Even if there were substance in this contention, we think that the court below would have been without jurisdiction to grant relief for the reasons already stated; but we do not think there is substance in the contention. It is unthinkable that Congress could have intended that the personal attention of the President should be diverted from the important questions of foreign and domestic policy upon which he is constantly engaged to pass upon such matters as whether a retiring board had or had not made an error of fact in the case of a particular individual taking retirement. While the statute provides that proceedings and decisions of the board shall be laid before the President for approval or disapproval, this is to be construed in the light of the well settled rule that the President may delegate administrative duties of this sort to his subordinates. Wilcox v. Jackson, 13 Pet. 498, 513, 10 L.Ed. 264; United States v. Eliason, 16 Pet. 291, 302, 10 L.Ed. 968; In re Confiscation Cases, 20 Wall. 92, 109, 22 L.Ed. 320; United States v. Farden, 99 U.S. 10, 19, 25 L.Ed. 267; Wolsey v. Chapman, 101 U.S. 755, 769, 25 L.Ed. 915; French v. Weeks, 259 U.S. 326, 42 S.Ct. 505, 66 L.Ed. 965; Creary v. Weeks, 259 U.S. 336, 42 S.Ct. 509, 66 L.Ed. 973. In no other way could the great office of the Presidency be administered. The case of Runkle v. United States, 122 U.S. 543, 7 S.Ct. 1141, 30 L.Ed. 1167, upon which appellant relies had relation to review of proceedings of a court martial, a duty held to be judicial in character and non-delegable. We think it clear that the rule of that case is not to be extended to review of proceedings such as are here involved.

Affirmed.