**SANFORD, Warden, v. ROBBINS.**

No. 9548.

Circuit Court of Appeals, Fifth Circuit.

Nov. 15, 1940.

Fred E. Strine, Atty., Dept. of Justice, of Washington, D. C., and Lawrence S. Camp, U. S. Atty., and Harvey H. Tisinger, Asst. U. S. Atty., both of Atlanta, Ga., for appellant.

Duke C. Meredith and Clint W. Hager, both of Atlanta, Ga., for appellee.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

William B. Robbins, imprisoned for life since 1919 on conviction of rape by the judgment of a court-martial, was on habeas cor-

pus set at liberty because tried a second time without his consent contrary to Article of War 40* and the Fifth Amendment of the Constitution. The Warden of the Penitentiary appeals.

▮ The civil courts cannot review the merits of cases tried in the military tribunals. On habeas corpus to obtain release from the sentence of a court-martial there can be no discharge if the court had jurisdiction to try the offender for the offense and the sentence was one which the court could under the law pronounce. Ex parte Mason, 105 U.S. 696, 26 L.Ed. 1213; United States v. Bullard, 2 Cir., 290 F. 704; 29 C.J., p. 93, 94. The sole contention here is that after a former conviction there was not jurisdiction to try the accused a second time for the same offense. It has been held that in a court-martial former conviction is a defense to be heard in the exercise of jurisdiction, and not a fact destroying jurisdiction. In re Bogart, 3 Fed.Cas.No.1,596. That the defense must be claimed and is waived by not asserting it is common learning in the criminal law. 14 Am.Jur., Criminal Law, § 280. When claimed and adversely determined there is an adjudication which if not reviewed is conclusive. This would be true though jurisdiction be said to depend on it, for a court can conclusively adjudge its own jurisdiction upon an actual contest of it. Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104; Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 229.

In this case Robbins and several others were in 1918 convicted by a previous court-martial of raping at the same time and place the same woman, and sentenced to death. The commanding general approved the sentence and forwarded it under Article of War 48 to the President for his confirmation. A board of review thought the trial had been unfair and illegal because too hasty, because all the accused were forced to trial together, and because only two counsel were appointed to represent sixteen defendants with different contentions so that representation by counsel was inadequate, and expressed the opinion that the President could declare the proceedings invalid and order a new trial before another court. On this advice the President on January 8, 1919, made an order to that effect: Before the newly appointed court the former conviction was pleaded in bar of further prosecution. The court overruled it, but stated they were swayed by the thought that men possibly guilty of a serious crime would otherwise escape, and that the President's order for a new trial was mandatory; but the court said it was "possibly not in strict accord with the 40th Article of War and the Fifth Amendment of the Constitution." Robbins was again convicted and sentenced to life imprisonment.

▮ Notwithstanding the hesitation of the court about the plea, it was a court and decided it. There was no lack of judicial atmosphere or of the aid and advice of counsel. The plea having been regularly urged and overruled, the district court probably ought not to have attempted to retry its merits.

Nevertheless, in view of the high nature of the constitutional right said to have been invaded, a violation of which by the sentence of any court, it is urged, will render imprisonment under it illegal, we too will re-examine it. The Warden contends, as the board of review argued, that the first court-martial by its refusal to grant delay and to appoint additional counsel for the accused "lost jurisdiction" to try the case, so that there was no jeopardy, citing Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L. Ed. 1461. The record shows that the week before the first trial a court of enquiry was held, which caused the arrest of the accused and fifteen other persons. One of the members of the court of enquiry, thus made familiar with the case, and another officer were appointed to represent the accused, something over a day before the trial opened. They asked to delay the trial and for additional counsel, as they had not time to become familiar with the contentions of each accused, and because, owing to the confessions of some, these ought to have separate counsel. The troops were about to move, so the trial was ordered to proceed, but an interval of twenty-four hours was allowed between the closing of the case for the prosecution and the hearing of the defenses. The court refused to appoint additional counsel. The proceedings were orderly. There was nothing of public excitement or mob spirit. Mainly because the representation by counsel was thought inadequate the President, on advice of the board of review, refused to confirm the sentence and ordered a new trial.

---

* The Articles of War referred to are those of force in 1919—39 Stats. 651. Changes were made June 4, 1920, 41 Stats. 788.

438

■ Despite some of the language in Johnson v. Zerbst, we do not think it accurate to say that a duly organized court, undominated by mob spirit or any outside force (compare Frank v. Mangum, 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969), but proceeding in an orderly way, loses its jurisdiction to try the accused because it rules wrongly upon some question of law, even constitutional law. And we do not think counsel for the accused appointed by the court, where none has been secured by him, is indispensably necessary to the due organization of the court. Without regard to the grade or seriousness of crimes, the Fifth Amendment requires, if a person accused of crime procures counsel, that the court shall permit such counsel to represent and assist the accused, but it does not require the court to furnish counsel. It is implied that reasonable opportunity shall be afforded to obtain counsel. The common law required the judge to represent the accused to the extent of seeing that he gets his legal rights and is not convicted unlawfully, and the judge may assist in questioning the witnesses. Where the accused has no counsel, this is still the common practice. Except where public defenders are provided by law the judge has no certain means of procuring counsel for the accused. As a matter of official duty, but not by any requirement of the Constitution, he will on request, and in serious cases without request, designate members of the bar who are present or accessible to represent the accused, and such members, though not compellable, in a spirit of duty commonly respond. Counsel for the accused, whether the crime be trivial or serious, whether the case be simple or complicated, whether request be made by the accused for assistance or not, has never been considered indispensable to the organization of a criminal court. The importance in the particular case of the court's procuring such counsel has always been a matter to be judged of by the court. Hundreds of cases have been tried without counsel. Sometimes no lawyer is available to be appointed. Sometimes the accused has ample means, but prefers to conduct his own case, or is too stingy to spend his money. Those convicted without counsel in ordinary cases, though there was no express "waiver of counsel", are not held under a void sentence. Their jailer is not guilty of false imprisonment. The sentence may in some cases be vulnerable to attack even by habeas corpus, but until attacked in a regular way it is valid as against the accused and protects those who execute it. Compare Wise v. Withers, 3 Cranch 331, 2 L.Ed. 457; Dynes v. Hoover, 20 How. 65, 15 L.Ed. 838. Those acquitted without counsel have in like manner been validly acquitted and cannot be tried again. The case of Johnson v. Zerbst ought not to be taken as establishing for settled law all that was said arguendo. It really held only that under the circumstances there disclosed there was a serious breach of constitutional right in the conduct of the case which on habeas corpus ought to be investigated and redressed. A habeas corpus court always labors under great difficulties in reviewing a trial, oftentimes at a great distance of time and space, and, in general, an appeal is the procedure to correct misconduct and errors. Also, the habeas corpus court cannot grant a new trial, which is the just remedy for errors; and it ought not lightly to release those who have been adjudged guilty. Where in an extraordinary case appeal is not a practical remedy, as in Johnson v. Zerbst, an extension of the remedy by extraordinary motion for new trial would be more fitting than release on habeas corpus. The executive pardon is a constitutionally appropriate relief from great failures in justice. We are unwilling in this case to say that the first court-martial, opened more than twenty-four hours after the two counsel were appointed, and granting a recess for twenty-four hours after hearing the evidence for the prosecution, proceeded with such haste and with such want of counsel as to extinguish its jurisdiction as a court.

■■ But we think the action of the President in granting a new trial "by reason of errors, jurisdictional and fundamental, committed during the trial" justified the second trial. We have no doubt that the provision of the Fifth Amendment, "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb", is applicable to courts martial. The immediately preceding exception of "cases arising in the land or naval forces" from the requirement of an indictment, abundantly shows that such cases were in contemplation but not excepted from the other provisions. Various interpretations have been put on the word "jeopardy", some courts thinking the first jeopardy is complete on the swearing of a jury, or on the submission of evidence. This is no doubt correct if the trial be stopped for insufficient cause. In other cases it is said that the meaning is that when there has been one real trial there

shall not be another; but if a verdict is prevented by something serious, a mistrial can be declared and a new trial ordered without the consent of the accused. In United States v. Perez, 9 Wheat. 579, 6 L.Ed. 165; Dreyer v. People of State of Illinois, 187 U. S. 71, 23 S.Ct. 28, 47 L.Ed. 79, and Keerl v. Montana, 213 U.S. 135, 29 S.Ct. 469, 53 L.Ed. 734, there were mistrials declared because the jury could not agree. In Simmons v. United States, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968, the jury were discharged during the trial because a juror was found to have sworn falsely on voir dire, and several jurors had read improper newspaper reports. In Thompson v. United States, 155 U.S. 271, 15 S.Ct. 73, 39 L.Ed. 146, a juror was discovered to have served on the grand jury which found the bill. The broad ground taken was that when it appears that a free and fair trial cannot be had it ought to be stopped, even over objection of the accused, and the Constitution will not prevent another and better trial.

As applied to courts-martial the provision against double jeopardy finds expression in Article of War 40, 10 U.S.C.A. § 1511, "No person shall, without his consent, be tried a second time for the same offense." A first complete trial, and not a justly or unavoidably interrupted one, is meant. By Article of War 48, 10 U.S.C.A. § 1519, confirmation by the President is generally necessary to perfect a death sentence, and this sentence was sent to him for confirmation. Article 50, as it stood in 1919, provided for mitigations and remissions, but not expressly for new trials. New trials had been granted by reviewing authorities on request of the accused but not otherwise. It has been said that a refusal to approve or confirm a sentence results in an acquittal. Ex parte Costello, D.C., 8 F.2d 386. Such action without more ends the proceedings abortively, and may very well end prosecution. If it is coupled with the accused's request for or consent to a new trial, and the confirmation is withheld in order to grant a new trial, the Costello case upholds the new trial. In the present case there was no express request for a new trial made to the President by the accused. Yet since he was condemned to death and might be helped and could not possibly be hurt by a new trial, his consent to it ought to be presumed in favorem vitae. As against his country a citizen and a soldier has not the right to elect to die. Robbins has in fact never desired to be executed. He wished to take advantage of the President's failure to confirm the old sentence, but to repudiate the condition annexed that there be a new trial. He would go free. We hold the request for and consent to a new trial by one condemned to death is to be presumed, the presumption being true in fact and required by a sound public policy.

Yet further, Congress in the Act of June 4, 1920, 41 Stats. 797, Article of War 50½, 10 U.S.C.A. § 1522, expressly provided in a proper case for a rehearing before a new court-martial composed of officers not members of the court which first sat, guarding the accused against conviction for anything he was previously acquitted of, and against a more severe sentence. The consent of the accused is not mentioned, and the stated safeguards appear to be provided as just because there is no consent. Congress by this Act construes the Constitution to permit a second hearing of the same case on such conditions. There is some analogy to a mistrial for failure of a jury to agree, since the reviewing authority whose concurrence is necessary does not agree, defeating the first hearing. Compare Manual for Courts Martial of 1921, Sect. 149(3) (b). We should not be inclined to hold this statute unconstitutional. It was reaffirmed in the Act of Aug. 20, 1937, 50 Stats. 724, 10 U.S.C.A. § 1522. And though it did not exist in 1919, no law then forbade the President to do what he did, in exact accord with the present Article 50½. We conclude that the second court-martial correctly overruled the defense of former conviction; but whether right or wrong, its judgment, not having been revised or reversed, must stand. We think the prisoner is not entitled to discharge. The judgment is reversed with direction to reincarcerate him.

Judgment reversed.