## WADE v. HUNTER.

No. 980.

District Court, D. Kansas,
First Division.

May 9, 1947.

Richard T. Brewster, of Kansas City, and N. E. Snyder, of Kansas City, Kan., for petitioner.

Randolph Carpenter, U. S. Atty., Eugene W. Davis, Asst. U. S. Atty. and James W. Wallace, Asst. U. S. Atty., all of Topeka, Kan. (Colonel William J. Hughes, Jr., JAGD, of Washington, D. C., and Colonel Franklin Riter, JAGD, of Salt Lake City, Utah, on the brief), for respondent.

MELLOTT, District Judge.

Petitioner, an inmate of the United States Penitentiary at Leavenworth, Kansas, assails, by a petition for a writ of habeas corpus, the legality of his commitment and detention. Copy of the order of a general court-martial[1] under which he is held is

---

[1] "The order is dated 10 Jan. 1946 and indicates that petitioner had been convicted before a general court-martial which convened at Bad Neuenahr, Germany on 30 June and 1 July, 1945, pursuant to paragraph 1, Special Orders No. 143, Headquarters Fifteenth United States Army, 23 June 1945, as amended by Paragraph 1, Special Orders No. 146, Headquarters Fifteenth United States Army, 26 June 1945 on a charge of having carnal knowledge of a German female, on or about 14 March 1945, forcibly and feloniously, against her will. Sentenced on July 1, 1945 to be dishonorably discharged, to forfeit all pay and allowances and to be confined at hard labor for the term of his natural life, the sentence was approved by the reviewing authority but the period of confinement was reduced to 20 years. The record of trial having been examined by the Board of Review in the Branch Office of The Judge Advocate General with the United States Forces, European Theater, the Board (three members,

attached to his petition and to the response of the Warden. Petitioner alleges that the order is illegal and void for several reasons, the chief one urged being that he had been twice put in jeopardy for the same offense in violation of the Fifth Amendment to the Constitution and the Fortieth Article of War, 10 U.S.C.A. § 1511.

There is no controversy between the parties as to the facts. Each specifically adopts the statement of facts set out in the holding of Board of Review No. 4 of the Branch Office of The Judge Advocate General with the European Theater, introduced in evidence in this proceeding. This court, therefore, specifically finds the facts to be as shown in such holding, summarizing them for present purposes and showing in footnotes some portions of the record of trial, deemed to be essential to an understanding of the issue to be determined.

Petitioner, then a Private First Class of Company K, 385th Infantry, and Thomas Cooper, a Private First Class in the same company, were arraigned separately and tried together with their consent, upon charges of violation of the 92nd Article of War, 10 U.S.C.A. § 1564, the specification, in each instance, being that the accused, on or about 14 March 1945, had forcibly and feloniously had carnal knowledge of a different named German female against her will. Cooper was acquitted and petitioner was convicted. Petitioner was sentenced to be dishonorably discharged from the service, to forfeit all pay and allowances due or to become due, and to be confined at hard labor, at such place as the reviewing authority should direct, for the term of his natural life. The reviewing authority approved the sentence but reduced the period of confinement to 20 years.[1]

When the general court-martial, which found petitioner guilty, convened at Bad Neuenahr, Germany, on 30 June, 1945, petitioner interposed a plea in bar on the ground of former jeopardy; but, at the suggestion of the court, the plea was reserved until arraignment. Upon arraignment the plea in bar was renewed. Extended argument upon the plea in bar ensued and a duly authenticated record of a former trial of the accused at Pfalzfeld, Germany, 27 March 1945 by a general court-martial appointed by the Commanding General, 76th Infantry Division, was introduced. There is shown in the margin the initial statement of counsel for the defendant made at that time.[2]

There is set out, at this juncture, a paragraph from the opinion of the Board of Review. "The record of former trial dis-

---

Judges Advocate, concurring) submitted its opinion to the Assistant Judge Advocate General in charge of the Branch Office that the record of trial was legally insufficient to support the findings of guilty and sentence. The Assistant Judge Advocate General dissented from the opinion of the Board of Review, monumenting his views in an opinion shown in the record of trial. The opinion of the Board of Review and the dissent of the Assistant Judge Advocate General were submitted to the Commanding General, United States Forces, European Theater, under the third paragraph of Article of War 50½, 10 U.S. C.A. § 1522, and upon consideration thereof and of the record of trial the sentence was confirmed 21 December 1945 by command of Joseph T. McNarney, General, U. S. Army, commanding."

[2] Major Richard T. Brewster, Cavalry, Headquarters 15th United States Army, who has since resumed the practice of law and now appears as counsel for petitioner, and who was counsel for the defendant, Wade, in the court-mar-

tial proceeding, said: "I would like to set out what the record shows. The record shows that the case against Private First Class Wade was tried; that after the prosecution and the defense rested, the court stated it wanted no further evidence, the prosecution stated it had no further evidence, the defense stated it had no further evidence and the court was closed. After deliberating on the case—and I state that when a court does deliberate on a case, it certainly places in jeopardy the man whose case is being deliberated on—the court reopened and requested the calling of certain other witnesses. The case was continued for those witnesses and I maintain that that court and no other court has the right to sit in judgment upon the case against Pfc. Wade. It would be a strange thing if other courts can sit in judgment on the case, not only would it violate the constitutional rights of Pfc. Wade given to him by the Fifth Amendment against twice being placed in jeopardy for the same offense, not only does it violate the plain language of

closes that Wade was tried before a court of competent jurisdiction upon the Charge and Specification involved here. He was arraigned and issues were joined by his plea to the general issue (Def.Ex. A, pp. 5, 6); the prosecution introduced evidence and rested (Def.Ex. A, pp. 7-22); and the defense introduced evidence and rested (Def.Ex. A, pp. 22-60). Both the prosecution and the defense then stated they had nothing further to offer, the court stated it did not desire any witnesses called or recalled, and, after arguments were made, the case was submitted and the court was closed (Def.Ex. A, p. 60). The court was opened later and announced that it desired to hear other named witnesses, and continued the case until a date to be fixed by the trial Judge Advocate (Def.Ex. A, p. 60). Seven days thereafter, on 3 April 1945, and prior to further action by the court, the appointing authority withdrew the charges, and directed that no further proceedings be taken by the court in conection therewith (Pros.Ex. A). On the same day he transmitted the charges and allied papers to the Commanding General, Third United States Army, with a recommendation for trial by general court-martial, stating that the case had been continued because of the unavailability of two witnesses due to illness, and that the tactical situation made the obtainment of the witnesses impracticable and precluded prompt disposition of the case (Charge Sheet, 4th Ind.). Thereafter, on 18 April 1945, the Commanding General, Third United States Army, transmitted the charges and allied papers to the Commanding General, Fifteenth United States Army, requesting that he assume court-martial jurisdiction because the civilian witnesses were residents of the territory under his jurisdiction (Charge Sheet, 5th Ind.). The Commanding General, Fifteenth United States Army, in compliance with this request, assumed court-martial jurisdiction, and on 26 April 1945, referred the case for trial by general court-martial (Charge Sheet, 1st Ind.)."

The documents referred to in the quoted paragraph are in evidence before this court. They support the statements made by the Board of Review. This opinion will be more understandable if some of them are referred to in more detail. First, then, reference will be made to the "closing" and "opening" of the court-martial. Following the announcement by counsel that "the defense rests" the prosecution announced that it had nothing further to offer and inquired whether the court wished to have any witnesses called or recalled. This being answered in the negative arguments were made and

"Neither the prosecution nor the defense having anything further to offer, the court was closed.

"The court was opened.

"Law Member: The court desires that further witnesses be called into the case, and to allow time to secure these witnesses, this case will be continued. We would like to have as witnesses brought before the court, the parents of this person making the accusation, Rosa Glowsky, and also the sister-in-law that was in the room who could further assist in the identification or identity of the accused. The court will be continued until a later date set by the T. J. A.

"The court then, at 1700 o'clock, P. M. 27 March 1945, adjourned to meet at the call of the president."

The withdrawal of the charge and the direction that no further proceedings be taken by the court, referred to by the Board of Review in the portion of its opinion or statement of facts set out above, are indicated in a communication from Headquarters, 76th Infantry Division, A. P. O. 76, U. S. Army to the Commanding Gener-

Article of War 40 but it violates every sense of justice and the due administration of justice because when you shift cases around, you allow time to lag, you allow witnesses to die in action and to disappear and you allow memory to fail. I say that not only on constitutional and legal grounds but on common sense grounds, this case should be barred as the only court which has jurisdiction is the court of the 76th Division of which Pfc. Wade was a member. I ask the court to consider those grounds."

al, Third U. S. Army, A. P. O. 403, shown in the margin.[3]

After receipt of the charges and allied papers by the Third United States Army on or about 3 April, 1945 and on or about 18 April 1945 it, through the Assistant Adjutant General for the Commanding General, transmitted the charges and allied papers to the Commanding General, Fifteenth U. S. Army, A.P.O. 408, copy of this communication being shown in the margin.[4] The Commanding General, Fifteenth United States Army, in compliance with this request, assumed court-martial jurisdiction, and on 26 April, 1945 referred the case for trial by general court-martial. Before doing so, however, communication was addressed to Commanding General, First Army, advising that Wade was claiming prior trial for same offense and asking that certified record of trial, if any, and copy of withdrawing order be transmitted.

Apparently in conformity with the request—in any event following it in the trial record—a brief of the Trial Judge Advocate on the subject of "Double Jeopardy" was filed. The conclusion of the Trial Judge Advocate, as therein expressed, was that "Private Wade has not been tried on a former occasion for the offense for which he is now being put on trial." This was premised upon essentially the same line of reasoning as that adopted by the Assistant Judge Advocate General in his communication to the Commanding General, United States Forces, European Theater (Main) A.P.O. 757, U. S. Army, advising that he did not concur in the holding of the Board of Review that the record of trial was legally insufficient and recommending a contrary holding. The brief of the respondent, filed in this proceeding, espouses the same view.

The question which evolves and as to which several well-trained and reputable members of the bar divide about equally,[5] is whether petitioner has been twice put in jeopardy for the same offense in violation

---

[3] "1. The charges and allied papers in the case of Pfc. Frederick W. Wade, 39208980, Co. K. 385th Inf, are transmitted herewith with a recommendation of trial by general court-martial. The case was previously referred for trial by general court-martial and trial was commenced. Two witnesses, the mother and father of the victim of the alleged rape, were unable to be present due to sickness, and the court continued the case so that their testimony could be obtained. Due to the tactical situation the distance to the residence of such witnesses has become so great that the case cannot be completed within a reasonable time.

"2. The accused has been served with a copy of the charges. The third copy of the supporting papers is in the hands of the defense counsel and the same will be forwarded as soon as they are obtained from him.

"3. The Trial judge advocate obtained the name of Mrs. Anni Endt, a neighbor of the alleged victim, and it is believed that she can further identify the accused.

"For the Commanding General:"

[4] "1. Transmitted herewith are charges and allied papers in the case of Private First Class Frederick W. Wade, 39208980, Company K, 385th Infantry, charged with rape of a German woman under Article of War 92. The German civilian against whom the crime was committed and other necessary civilian witnesses are residents of territory now under your jurisdiction.

"2. It is impracticable to try this case by court-martial appointed at this headquarters at this time in view of the tactical situation and fact that the location of the incident and places of residence of necessary civilian witnesses are a considerable distance without the boundaries of this command. Standing Operating Procedure No. 35, Military Justice—Continental Operations, published 16 July 1944 by Headquarters European Theater of Operations, U. S. Army, provides that when practicable the trial of cases involving the peace and quiet of a civil community will be held in the immediate vicinity of the alleged offenses. In order to accelerate the prompt trial of these offenses, it is requested that you assume court-martial jurisdiction in these cases.

"3. The accused is at present in confinement in the Third U. S. Army Stockade, but will be delivered upon request to such place as you may designate.

"For the Commanding General:"

[5] The views of counsel for the petitioner coincide with those of the three Judge Advocates who constituted the Board of Review while the views of the respondent appear to be supported by at least an equal number of lawyers in the Judge Advocate General's Department.

of the Fifth Amendment to the Constitution. A preliminary issue is whether this court has any jurisdiction to determine the question in a habeas corpus proceeding. An incidental, although by no means an inconsequential question, is whether the doctrine of "Imperious Necessity" or "Urgent Necessity", authorized the Commanding General of the 76th Infantry Division, in the exercise of his sound discretion, to stop the first trial, withdraw the charges and refer them to the Commanding General of the Third Army for re-trial without hazarding the accused's claim that he had been placed in jeopardy by the proceedings before the 76th Infantry Division Court.

█ At the outset it may be said that this court recognizes the limited scope of its inquiry under a petition for a writ of habeas corpus. As learned counsel for the respondent correctly point out upon brief, this court is not an appellate tribunal sitting in review of court-martial judgments, and it will not arrogate to itself an examination of the record of trial for the purpose of determining whether errors were committed in the reception or rejection of evidence or whether the finding of guilt was sustained by the evidence. Courts-martial are lawful tribunals, with authority to determine cases over which they have jurisdiction; and their proceedings, when confirmed as provided by law, are not to be lightly overturned. But it must be borne in mind that a court-martial is a "creature of statute, and, as a body or tribunal, it must be convened and constituted in entire conformity with the provision of the statute or else it is without jurisdiction." [6] The first inquiry, therefore, must be whether the court-martial which committed petitioner had jurisdiction to do so.

█ Inferentially, counsel for the respondent seem to be of the view that this court is bound by the determination of the court-martial that it had jurisdiction to try the accused and to issue the commitment in question. This seems to be premised upon the assumption that the court-martial's ruling on the question of "double jeopardy" and non-applicability of the Fifth Amendment was a ruling upon a legal issue arising during the trial and therefore may not be inquired into in a collateral proceeding. While the language of some decisions may tend to support that view, [7] this court is of the opinion that later pronouncements by the Supreme Court authorize it to determine, in a habeas corpus proceeding, whether the petitioner has been twice put in jeopardy for the same offense; [8] for, if the sentence was "beyond the jurisdiction of the court, because it was against an express provision of the Constitution which bounds and limits all jurisdiction," Ex parte Hans Nielsen, 131 U.S. 176, 185, 9 S.Ct. 672, 675, 33 L.Ed. 118, it is invalid. [9]

Before passing upon the issue of "double jeopardy" it is appropriate to consider another important question raised by learned counsel for the respondent upon brief. Stated generally it is that one in the military service of his country may not be allowed the protection of the Fifth Amendment. Specifically, it is contended that the petitioner at bar must seek his rights under, and his case must "be governed exclusively by, the 'double jeopardy' provision of the Fortieth Article of War." The Fifth Amendment provides that no person "shall

[6] McClaughry v. Deming, 186 U.S. 49, 22 S.Ct. 786, 46 L.Ed. 1049. Cf. Carter v. Roberts, 177 U.S. 496, 20 S.Ct. 713, 44 L.Ed. 861; Carter v. McClaughry, 183 U.S. 365, 22 S.Ct. 181, 46 L.Ed. 236; Grafton v. United States, 206 U.S. 333, 27 S.Ct. 749, 51 L.Ed. 1084, 11 Ann.Cas. 640; Reaves v. Ainsworth, 219 U.S. 296, 31 S.Ct. 230, 55 L.Ed. 225; French v. Weeks, 259 U.S. 326, 42 S.Ct. 505, 66 L.Ed. 965; Ex parte Reed, 100 U.S. 13, 25 L.Ed. 538; Collins v. McDonald, 258 U.S. 416, 42 S.Ct. 326, 66 L.Ed. 692. Contra Sanford v. Robbins, 5 Cir., 115 F.2d 435.

[7] See, e. g. Ex parte Bigelow, 113 U.S. 328, 5 S.Ct. 542, 28 L.Ed. 1005.

[8] Clawans v. Rives, 70 App.D.C. 107, 104 F.2d 240, 122 A.L.R. 1436; Ex parte Hans Nielsen, 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118; United States v. Ball, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300.

[9] Cf. Rosborough v. Rossell, 1 Cir., 150 F.2d 809; Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; Bowen v. Johnston, 306 U.S. 19, 59 S.Ct. 442, 83 L.Ed. 455; and Amrine v. Tines, 10 Cir., 131 F.2d 827.

* * * be subject for the same offense to be twice put in jeopardy of life or limb." The Fortieth Article of War is shown in the margin.[10] Under the latter it seems that the pleas "Autrefois acquit" and "Autrefois convict" may be interposed but not the plea of "former jeopardy." Since neither the plea of autrefois acquit nor autrefois convict could be sustained upon the present record, a holding that the Fifth Amendment is not applicable would require discharge of the writ and denial of the petition. No case cited to, or found by, this court so holds and it is reluctant to be the pioneer in such a decision.

█ The argument of counsel proceeds substantially as follows: The Congress has the power to provide for trial and punishment of military and naval offenses and has done so, independent of the civil judicial system provided by the Constitution. The courts have held that the framers of the Constitution meant to limit the right of trial by jury, in the Sixth Amendment, to those persons who were subject to indictment or presentment in the Fifth Amendment, i. e. to those who were not involved "in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger."[11] By analogy, if one in the military forces may be denied the right of trial by jury notwithstanding the Sixth Amendment, he may also be denied the protection of the Fifth Amendment against being twice put in jeopardy for the same offense. While some of

the early decisions contained dicta which might be interpreted as construed by respondent, the Supreme Court, in the judgment of this court, has not specifically so held. On the contrary, in a much later case, also discussed by counsel upon brief,[12] it is pointed out that while Congress, "by express constitutional provision, has the power to prescribe rules for the government and regulation of the Army * * * those rules must be interpreted in connection with the prohibition against a man's being put twice in jeopardy for the same offense." This language is characterized by counsel for respondent as obiter dictum, inasmuch as the discussion in which it is contained seems to be broader than the issue under consideration; but while the question now raised is not precisely the same as the one before the court in the cited case, this court is constrained to accept the quoted statement as a correct exposition of the principle of law to be applied.

█ It is of interest to note that the Board of Review took essentially the same view of the question as this court has indicated it takes. It held that the intendment of the two inhibitions against double jeopardy—i. e. the Fifth Amendment and Article of War No. Forty—was essentially the same, pointing out that the Fifth Amendment "is a limitation on courts-martial, as they, like other courts deriving from an exercise of the Federal power, are subject to the restrictions of the Bill of Rights ex-

[10] Title 10 U.S.C.A. § 1511. "As to number (article 40). No person shall, without his consent, be tried a second time for the same offense; but no proceeding in which an accused has been found guilty by a court-martial upon any charge or specification shall be held to be a trial in the sense of this article until the reviewing authority and, if there be one, the confirming authority shall have taken final action upon the case.

"No authority shall return a record of trial to any court-martial for reconsideration of—

"(a) An acquittal; or

"(b) A finding of not guilty of any specification; or

"(c) A finding of not guilty of any charge, unless the record shows a finding of guilty under a specification laid under that charge, which sufficiently al-

leges a violation of some article of war; or

"(d) The sentence originally imposed, with a view to increasing its severity, unless such sentence is less than the mandatory sentence fixed by law for the offense or offenses upon which a conviction has been had.

"And no court-martial, in any proceedings on revision, shall reconsider its finding or sentence in any particular in which a return of the record of trial for such reconsideration is hereinbefore prohibited. (June 4, 1920, c. 227, subchapter II, § 1, 41 Stat. 795.)"

[11] Ex parte Milligan, 4 Wall. 2, 123, 71 U.S. 2, 123, 18 L.Ed. 281.

[12] Grafton v. United States, 206 U.S. 333, 27 S.Ct. 749, 754, 51 L.Ed. 1084, 11 Ann.Cas. 640.

762

cept insofar as special constitutional provision for them is made." The authorities cited [13] support the conclusion reached.

Respondent contends that the portion of Article of War Forty reading: " * * * but no proceeding in which an accused has been found guilty by a court-martial upon any charge or specification shall be held to be a trial in the sense of this article until the reviewing and, if there be one, the confirming authority shall have taken final action upon the case" is definitive of "jeopardy" in all cases triable by courts-martial. This court is constrained to hold, as did the majority of Board of Review No. 4, that such definition is applicable only to those cases in which the accused has been found guilty, and that the purpose of such provision is to authorize the reviewing or confirming authority to remand a case for a new trial where the finding of guilty is not approved. The context of Article Forty indicates the provision quoted is but a statement of principles protecting the accused rather than an enlargement of the power of the reviewing or confirming authority to a point of conflict with the protection of the double jeopardy clause of the Fifth Amendment. A construction of a statute which does not conflict with the constitution is to be preferred over one which conflicts with the constitution.

▆▆▆ Has petitioner been twice placed in jeopardy for the same offense within the purview of the Fifth Amendment? "The general rule is that a person is not in jeopardy until he has been arraigned on a valid indictment or information, has pleaded, and a jury has been impaneled and sworn; and where a case is tried to a court without a jury, jeopardy begins after accused has been indicted and arraigned, has pleaded and the court has begun to hear evidence." McCarthy v. Zerbst, Warden, 10 Cir., 85 F.2d 640, 642. The prohibition against double jeopardy is not directed to the peril of a second punishment, but to a second trial for the same offense. Kepner v. United States, 195 U.S. 100, 130, 24 S.Ct. 797, 49 L.Ed. 114, 1 Ann.Cas. 655.

▆▆▆ The Board of Review expressed the opinion that the burden of pleading and proving former jeopardy rested upon petitioner and, in the event of his failure so to do, waiver would follow. The record clearly indicates, however, that no waiver occurred, the plea having been properly made and argued at length. That it should have been sustained seems to be clear, tested by the rule referred to in the preceding paragraph. Whether the refusal of the military authorities to release upon the ground of double jeopardy may be passed upon in a habeas corpus proceeding has already been discussed. Being of the opinion that it may, the Court now holds that petitioner was placed in jeopardy by the court-martial convened by the 76th Infantry Division; that his subsequent trial and conviction by the general court-martial convened by the 15th United States Army at Bad Neuenahr, Germany, placed him in double jeopardy; and that the last-mentioned trial and conviction are void for lack of jurisdiction unless the doctrine of "Imperious Necessity" or "Urgent Necessity", yet to be considered, justifies a different conclusion.

It is significant that the view of this court, which is essentially the same as that expressed by the Board of Review in its opinion, was also shared by the Assistant Judge Advocate General (who dissented from the conclusion of the Board of Review) as expressed in his communication to the Commanding General, United States Forces, European Theater. Therein he said: "I am in accord with the Board of Review in its analysis of the principles of law applicable to the plea of former jeopardy and subscribe to the doctrine expressed in the opinion that in the trial of cases before general courts-martial, jeopardy within the meaning of the relevant provision of the Fifth Amendment to the Federal Constitution may attach prior to findings by the court and approval of the sentence by the reviewing authority. I further agree with the Board of Review that the 40th Article of War must be read in the light of the Fifth Amendment and the adjudications of

---

[13] Sanford v. Robbins, 5 Cir., 115 F.2d 435, 438; United States ex rel. Innes v. Hiatt, 3 Cir., 141 F.2d 664; Ex parte Quirin, 317 U.S. 1, 62 S.Ct. 1, 2, 87 L. Ed. 3. Cf. Schita v. King, 8 Cir., 133 F. 2d 283; Shapiro v. United States, Ct. Cl., 69 F.Supp. 205.

the Federal Courts with respect to the 'double jeopardy' clause thereof."

His difference with the Board of Review was stated to "resolve about the question as to the operative effect" and applicability of the principles discussed in the opinion of the Circuit Court of Appeals for the Ninth Circuit in the case of Cornero v. United States, 9 Cir., 48 F.2d 69, 74 A.L.R. 797.

In Cornero v. United States, supra, a jury had been impaneled to try defendants charged with a conspiracy to violate the National Prohibition Act. The prosecuting attorney having announced that he was unable to proceed because of the absence of necessary witnesses, the jury was discharged. The court held that jeopardy had attached and that the doctrine of imperious necessity did not extend to the absence of witnesses.

The Board of Review, relying upon the statement made in the communication from Headquarters, 76th Infantry Division to the Commanding General of the Third Army (see footnote 3): "—The case was previously referred for trial by general court-martial and trial was commenced. Two witnesses, the mother and father of the victim of the alleged rape, were unable to be present due to sickness, and the court continued the case so that their testimony could be obtained.—" applied the rationale of the Cornero case, pointing out that while situations might arise in the administration of military justice, calling for the exercise of the doctrine of imperious necessity, the absence of witnesses alone "does not sanction the exercise of the doctrine." The Assistant Judge Advocate General took the view, however, "that the situation disclosed in the instant case is, in the application of the doctrine to the military courts, well within the description of 'urgent circumstances', notwithstanding the general accepted limitation of the civil courts." He placed substantial reliance upon the sentence in the communication immediately following that set out above (see footnote 3), reading: "Due to the tactical situation the distance to the residence of such witnesses has become so great that the case cannot be completed within a reasonable time."

Counsel for respondent, upon brief, urge that the sentence last quoted "is a finding by the Commanding General of the 76th Infantry Division that a military situation existed which required the discontinuance of the trial before the court appointed by him and the transfer of the cause to a jurisdiction where military conditions permitted the production of the witnesses." This court does not so construe the language used, especially when considered, as it should be, in its context. In this connection the record with reference to the closing and re-opening of the case, shown elsewhere in this opinion, should likewise be considered.

■ It would serve no good purpose to discuss at length the doctrine of "imperious" or "urgent" necessity. The Board of Review defines it as "a sudden and overwhelming emergency, uncontrollable and unforseeable, infecting the judicial process and rendering a fair and impartial trial impossible. It does not mean expediency." The Board's characterization of the term as " * * * an illusive and expansive doctrine, not susceptible of precise definition because it is designed to apply to emergent situations * * *," is approved by the Assistant Judge Advocate General in his communication to the Commanding General as is also its statement to the effect that "the power should be exercised with caution, and * * * be limited to the most urgent circumstances"—"a real emergency which by diligence and care could not have been averted." Cf. United States v. Perez, 9 Wheat. 579, 6 L.Ed. 165. The list of instances in which it is to be applied, given in the opinion of the Board of Review—where a jury is unable to agree; misconduct tainting the panel; inflammatory press releases corrupting the jury; relationship of a juror to the accused; incapacity of a juror, etc.—is illustrative only. Other situations come to mind; and if the record in the case at bar indicated that the "tactical situation" was the motivating reason for discharging the first court-martial, this court would not hesitate to hold that the doctrine is applicable. As previously pointed out, however, the absence of witnesses, rather than an emergency due to the military situation, seems to

have been the reason for the withdrawal of the case from the court-martial which first heard it.

This court is of the opinion and now holds that petitioner is illegally detained and restrained of his liberty by the respondent herein. Order releasing him from custody is accordingly being entered. Inasmuch as the order is reviewable, Title 28 U.S.C.A. § 463, a good and sufficient bond, conditioned according to law, in the amount of $2,500, to be approved by the clerk of this court, is being made a condition precedent to petitioner's release. Rules of the Supreme Court, Rule 45, 28 U.S.C.A. following section 354.