THOMAS v. HUNTER.

No. 1158.

District Court, D. Kansas, First Division.

July 8, 1948.

Howard F. McCue, of Topeka, Kan., for petitioner.

Randolph Carpenter, U. S. Atty. and Eugene W. Davis, Asst. U. S. Atty., both of Topeka, Kan., for respondnt.

HUXMAN, Circuit Judge.

In this action Richard J. Thomas seeks release from the custody of respondent, Walter A. Hunter, through the medium of a writ of habeas corpus. A somewhat detailed statement of fact of petitioner's history in the Federal courts is necessary in order to understand the issues involved in this litigation.

Petitioner was first convicted on a Dyer Act, charge 18 U.S.C.A. § 408, and sentenced to a term of five years (later reduced to four years) by the United States District Court for the Southern District of Mississippi on November 24, 1937. On December 22, 1940, he was conditionally released from the penitentiary. On May 14, 1941, a parole violator's warrant was issued against him. On October 16, 1941, he was arrested by an agent of the F.B.I. and a member of the Missouri Highway Patrol and placed in jail. On October 23, 1941, he was formally arrested by a Deputy United States Marshal on a warrant issued by the United States Board of Parole. On October 24, 1941, he was arrested on a warrant charging a violation of the Dyer Act. An indictment was returned against him on this latter arrest and in April, 1942, he pleaded guilty to the offense. Previous to the plea, he was charged by indictment with two alleged escapes, one on November 21, 1941, and the other on January 8, 1942. He was tried in April, 1942, on the escape indictments by a jury and was found guilty. Thereupon, the Missouri United States District Court sentenced him to four years on his plea of guilty to the Dyer Act charge and to five years on each attempted escape, and made all three sentences run consecutively. All the habeas corpus actions hereinafter referred to arose out of his trial on the escape charges.

Prior to the institution of the habeas corpus actions in this court, and while confined in the penitentiary under the sentence imposed by the Missouri United States District Court, Thomas instituted a proceeding in that court in the nature of a coram nobis proceeding. This proceeding was predicated on the ground that he was not represented at all stages of the trial on the escape charges by counsel. He testified that his attorney, J. Grant Frye, was not present in court when the jury returned its verdict. The coram nobis proceeding shows that his attorney, Frye, testified that he was present in court when the jury returned its verdict.

After his incarceration in the Federal Penitentiary under the sentences imposed by the Missouri Court, Thomas instituted a habeas corpus action in this court seeking release on two grounds: (1) That the escape sentences were not in conformity with the Escape Act, 18 U.S.C.A. § 753h; and (2) that he was denied the right of counsel at the time the jury in the Missouri trial returned its verdict. He was denied relief in the trial court. On appeal, the Circuit Court reversed and remanded the case with direction to permit the petitioner to adduce testimony on the question of whether he was denied his right of counsel at any stage of that trial. See Thomas v. Hunter, 9 Cir., 153 F.2d 834.

When the case was set for further proceedings in the District Court, Thomas testified that his attorney was not present when the jury returned its verdict. Respondent produced no evidence to controvert such testimony. The District Attorney sought to cross examine Thomas as to the testimony in the coram nobis proceeding by his attorney, Frye, to the effect that he was present when the jury returned his verdict. Objection was sustained to this line of cross examination on the ground that it was hearsay. No evidence being offered in opposition against Thomas' testimony, the trial court entered judgment releasing him from the custody of the respondent.

Within ten days of the entry of this judgment, respondent filed a motion for rehearing, as follows:

"Comes now the respondent and moves the court to set aside the order filed in this action on November 21, 1946, wherein, for reasons set out in Memoranda Findings of Fact and Opinion of the Court dated November 19, 1946, the petitioner was ordered to be released from respondent's custody in the United States Penitentiary at Leavenworth, Kansas.

"For cause of motion, respondent states that notwithstanding petitioner's testimony before this court and this court's finding based thereon that petitioner's counsel, J. Grant Frye, was absent from court when the jury hearing petitioner's consolidated criminal cases in the Eastern District of Missouri brought in its verdict, said attorney Frye was actually present.

"Respondent attaches hereto and makes a part hereof as though fully rewritten herein, as Exhibits 'A' and 'B', respectively, affidavits, dated November 21, 1946, executed by the Honorable Harry C. Blanton, United States Attorney, and Russell Vandivort, Assistant United States Attorney, for the Eastern District of Missouri, who participated in the trial of the aforesaid consolidated criminal cases, as evidence concerning the actual presence of petitioner's counsel at the time in question.

"Respondent, in the light of the foregoing, prays the Court for an order setting aside the ruling discharging petitioner from custody and granting respondent a rehearing in this cause to the end that the pertinent issue herein, to-wit, the fact covering presence of petitioner's attorney at reception of verdict may be established."

This motion had attached as exhibits affidavits by Harry C. Blanton, United States Attorney for the Eastern District of Missouri, and Russell Vandivort, Assistant United States Attorney for the Eastern District of Missouri, stating that Frye was present when the verdict was received. This motion was objected to on the ground that it did not constitute newly discovered evidence. The court heard the motion on December 9, 1946. At this hearing, Frye and Blanton were present and both testified that Frye was present when the jury returned its verdict. The court granted a

928

rehearing and set the same for January 6, 1947. At that hearing, the testimony of Frye and Blanton offered at the December hearing was received. The court set aside its former judgment releasing Thomas and entered a judgment remanding him to the custody of the respondent. Thomas again appealed to the Circuit Court. See Thomas v. Hunter, 10 Cir., 163 F.2d 1021. Here the judgment was affirmed on the authority of the former decision in that court. In this second appeal, Thomas presented only the question of the legality of the sentences.

Thereafter he instituted this habeas corpus proceeding in which he again urges the same two grounds that he urged in the other hearing; namely, the illegality of the sentences and that he was not represented by counsel at the time the jury returned its verdict. The Circuit Court passed on the first contention in its first decision, see 153 F.2d 834, and while one decision in a habeas corpus case is not res adjudicata, nothing new is presented on this point that was not urged in the former hearing and considered by the appellate court in reaching its conclusions, and this court is of the opinion that that ruling is correct and that petitioner is not entitled to any relief on account of the first ground urged in this proceeding.

The second contention presents more serious difficulties. It depends upon whether the judgment of the trial court on the rehearing setting aside its former judgment releasing Thomas and entering a judgment remanding him to the custody of the respondent was void or merely erroneous. If the latter, it was petitioner's duty to raise that question on appeal and having failed to do so, the judgment has become final and cannot now be attacked in this proceeding. If the action of the court setting aside the judgment and granting a rehearing was however void, it may be attacked at any time and is properly raised in this proceeding. It is somewhat difficult to catalog the motion for rehearing filed by the attorney for respondent. It is not denominated a motion for a new trial nor does it seem to be predicated on the ground of newly discovered evidence, yet the proceeding in the former trial seems to indicate that it was treated as a motion for a new trial on the grounds of newly discovered evidence. Petitioner objected to the motion on the grounds that it disclosed no newly discovered evidence. The court in its conclusions indicates that the evidence was not newly discovered. Apparently the trial court did not grant the motion on the ground of newly discovered evidence but upon the ground that the court had been imposed upon by Thomas in the former hearing. Thus the court said: "However, the court is definitely of the opinion it has been imposed upon in this case; that not only may a motion for a new trial be granted upon the ground of newly discovered evidence, but under the Kansas Statutes and under the well established practice existing, I take it in most courts, the court would feel that it is not doing right if it came to the conclusion that its verdict or report or decision had been procured by the corruption of the party obtaining it or by perjured testimony adduced by him. That is the view that the court finds itself in in this case."

Thus it would seem that in setting the judgment aside the court acted upon its own volition and upon its inherent power over its judgment after having had its attention called to the matter by the motion for rehearing.

Apparently the attorney for respondent concurs in this conclusion because his brief on this question filed with this court states: "It may be first noted that respondent's motion for a rehearing is not based on 'newly discovered evidence.' Respondent in the former habeas corpus case did not represent to the court in the motion, nor does he claim now that he had no prior information whatever on the question of petitioner's representation by counsel at the times in question. The basis of respondent's motion was not that the evidence on this issue was 'newly discovered'; on the contrary, when read in a fair and reasonable light, it brought to the attention of the court that its order releasing petitioner was an improvident one, based on uncorroborated testimony of the petitioner that simply was untrue."

The conclusion seems inescapable that the court, in setting aside its former

judgment and granting a new trial, or rehearing as it was called, acted upon its own inherent power. The fact that a court may have been imposed upon is not a ground entitling the losing party to a new trial or one which he may urge as a right to a new trial.

██ The decision does not turn either on whether the court was justified in its conclusion, as a matter of law, that it had been imposed upon or on whether the testimony of Thomas constituted perjury. Thomas has at all times vigorously maintained and testified under oath that Frye was not present at the time in question. True, Frye testified that he was present. His testimony was corroborated by that of District Attorney Blanton, but the mere fact that there was a sharp conflict in direct testimony on a specific point does not itself establish perjury or which of the two parties was guilty of perjury, if any. It is conceded in the record that Frye returned to his office after the jury retired to deliberate. As pointed out, the motion for rehearing had attached the affidavit of Vandivort stating that Frye was present at the time the verdict was returned, but it was also stipulated by the parties in this case that the District Attorney for Kansas had a letter from Vandivort dated February 4, 1946, stating that "he could not recall whether the petitioner's attorney, Frye, was present at the time of sentence." It contains no statement relative to whether he recalled or did not recall that Frye was present when the jury returned its verdict into court. The attorney for respondent knew what Frye had testified to in the coram nobis proceeding. He called it to the court's attention by trying to cross examine Thomas with regard thereto. The court did not permit these questions because the testimony would be hearsay. So the existence of Frye's testimony in the coram nobis proceeding was called to the attention of the court before it entered its judgment releasing Thomas.

The court does not, however, rest its decision upon whether the trial court was imposed upon or upon whether the testimony of Thomas constituted perjury to the extent that it can be said that the judgment was obtained by him through fraud. For the purpose of this decision, it will be assumed that this is so.

The precise question then is within what period of time must the court exercise its inherent powers over its judgments. Formerly it had jurisdiction over its judgments during the term, but Rule 59(d) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, has reduced this time to ten days. It provides: "Not later than 10 days after entry of judgment the court of its own initiative may order a new trial for any reason for which it might have granted a new trial on motion of a party, and in the order shall specify the grounds therefor."

In Marshall's U. S. Auto Supply v. Cashman, 10 Cir., 111 F.2d 140, 142, a motion for a new trial setting out four grounds in support thereof was filed. The motion was filed within ten days but came on for hearing after the expiration of such time. The trial court granted the motion on all the grounds stated therein and on the additional ground that the court was not satisfied with the verdict. On appeal, the Circuit Court held that none of the grounds stated in the motion were good and that the court was without power to grant a new trial on its own volition after ten days from the entry of its judgment even though a motion for a new trial was filed within time. The court said: "But that was wholly ineffective for in that respect the court acted on its own initiative, and Rule 59(d), supra, limits the time within which a court may order a new trial on its own initiative to ten days from the entry of the judgment. That time had long since expired, and the seasonable serving of the motion did not operate to extend the time within which the court could act on its own initiative. It follows that at the time the order was entered the court was without power to order a new trial otherwise than on the motion." See also Freid v. McGrath, 76 U.S.App.D.C. 388, 133 F.2d 350.

██ Respondent takes the position that the Rules of Civil Procedure do not apply to proceedings in habeas corpus. Rule 81(a)(2) provides that: "In the following

proceedings appeals are governed by these rules, but they are not applicable otherwise than on appeal except to the extent that the practice in such proceedings is not set forth in the statutes of the United States and as heretofore conformed to the practice in actions at law or suits in equity: admission to citizenship, habeas corpus * * *."

Part of the practice relating to habeas corpus is set out in the Statute. See 28 U.S.C.A. §§ 451 to 463. To the extent that the Statutes prescribe the practice, the Rules of Civil Procedure do not apply. Rule 81(a) (2) would seem to indicate that in all other respects they do apply. There is no statute relating to motions for rehearing or new trials in habeas corpus proceedings. As to such matters, it would seem that the Rules do govern. It has been held that the Rules of Civil Procedure govern motions for new trials in habeas corpus proceedings. See Wade v. Hunter, D.C., 72 F.Supp. 755; De Jordan v. Hudspeth, 10 Cir., 137 F.2d 943; Moore's Federal Practice, 81.04, pp. 3426, 3427. I conclude that since there are no statutory enactments relating to motions for rehearings in habeas corpus proceedings, such matters are governed by the Rules of Civil Procedure.

The language in Marshall's Auto Supply Co., v. Cashman, supra, that the "Court was without power to order a new trial otherwise than on the motion" to me means that the trial court lacks jurisdiction to grant a rehearing on its own motion after the expiration of ten days after the entry of the judgment. The word "power" is synonymous with jurisdiction. The facts in this case are similar to those in Aderhold v. Murphy, 103 F.2d 492, decided by the Tenth Circuit. In that case in a habeas corpus proceeding, the court entered a judgment discharging the petitioner. After the expiration of the term of court, the court sua sponte entered an order setting aside the judgment. On the question of the effect of the order setting aside the judgment, the court said: "It follows that the court was without power to enter its order of June 30, 1938, and that the same is void."

The only difference in the two cases is that prior to the New Rules, the court had jurisdiction during the term to modify its judgments, while, under the New Rules, that time is limited to ten days from the date of entry thereof.

While it is not stressed in the briefs, one other question presents itself to the court. Again assuming, without deciding, that the judgment was obtained by fraud, does that warrant the court in setting it aside after the ten-day period? It is generally stated that fraud vitiates everything, but as stated by the Supreme Court in United States v. Throckmorton, 98 U.S. 61, 25 L.Ed. 93: "The maxim that fraud vitiates every proceeding must be taken, like other general maxims, to apply to cases where proof of fraud is admissible."

The Throckmorton case is the leading case on the subject. It contains a full discussion of the applicable principles. No detailed discussion will be undertaken as to the holding in this case. The following excerpts, however, are pertinent. Thus, on page 66, the court said: "On the other hand, the doctrine is equally well settled that the court will not set aside a judgment because it was founded on a fraudulent instrument, or perjured evidence, or for any matter which was actually presented and considered in the judgment assailed."

Further, the court states: "But where the same matter has been actually tried, or so in issue that it might have been tried, it is not again admissible; the party is estopped to set up such fraud, because the judgment is the highest evidence, and cannot be contradicted."

The court then states: "We think these decisions establish the doctrine on which we decide the present case; namely, that the acts for which a court of equity will on account of fraud set aside or annul a judgment or decree, between the same parties, rendered by a court of competent jurisdiction, have relation to frauds, extrinsic or collateral, to the matter tried by the first court, and not to a fraud in the matter on which the decree was rendered."

The holding of the court is summarized in the syllabus, as follows: "The frauds for which a bill to set aside a judgment or a decree between the same parties, rendered by a court of competent jurisdiction,

will be sustained, are those which are extrinsic or collateral to the matter tried, and not a fraud which was in issue in the former suit."

and, "The cases where such relief has been granted are those in which, by fraud or deception practiced on the unsuccessful party, he has been prevented from exhibiting fully his case, by reason of which there has never been a real contest before the court of the subject-matter of the suit."

The case of Hazel–Atlas Glass Company v. Hartford–Empire Company, 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250, somewhat weakens the doctrine laid down in the Throckmorton case. This was an action instituted in a court of equity eleven years after judgment was obtained to set it aside on the grounds of fraud. The Supreme Court held that the trial court had jurisdiction to entertain the suit, but in the opinion it was careful to again point out that there was a distinction between extrinsic fraud and intrinsic fraud, and the decision is based on the assumption that the fraud complained of was extrinsic fraud. There was also a vigorous dissent even from this modification or weakening of the Throckmorton case by Justice Roberts, joined in by Justice Reed and Justice Frankfurter, and also by the Chief Justice.

The two cases just discussed arose in independent actions instituted in an equity court to set aside judgments, and to that extent the factual situation before the court which led to these pronouncements was different from the facts in this case, but the principles seem applicable.

 Even if we assume that Thomas was guilty of fraud, it was not extrinsic fraud. His fraud certainly did not deceive the respondent or prevent him from fairly presenting his case because he had facts in his possession at that time which he subsequently used to obtain a modification of the judgment. It is clear to me that if this were a case in which an independent action was brought to set aside the judgment on the ground of fraud the ruling would, of necessity, be that at best the fraud was intrinsic and that under the decisions of the Supreme Court no relief could be granted. Under these circumstances, it is diffi-

cult for me to conclude that the inherent powers which the court has over its judgments to modify them or to set them aside if it acted within ten days, was enlarged by the fact that perjured testimony was used, if it was so used.

My search has failed to reveal a single decision in which the precise question has been involved, and while the question is not free from doubt, I have come to the conclusion from what was said in the Marshall Auto Supply case and the Aderhold case, that after ten days from the entry of a judgment, the court is without power or jurisdiction, whichever term may be used, on its own volition to modify that judgment even on the ground of intrinsic fraud. Whether it could modify that judgment thereafter on the ground of extrinsic fraud is not involved in this case and is therefore not decided.

Having reached the conclusion that the judgment of the court setting aside its first judgment discharging the petitioner and granting a rehearing was void, it follows that the judgment based thereon remanding him to the custody of the respondent is likewise void and that petitioner is entitled to his release.

An order and judgment will therefore be prepared and entered directing the respondent to release petitioner from custody.